# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DEXTER WELCH | ) | Civil Action No. 3:24-CV-00422 |
| | ) | |
| Plaintiff, | ) | Judge: Waverly D. Crenshaw, Jr. |
| | ) | Magistrate Judge: Barbara D. Holmes |
| v. | ) | |
| | ) | **JURY DEMAND** |
| UNITED NETWORK FOR ORGAN | ) | |
| SHARING; and VANDERBILT | ) | |
| UNIVERSITY MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT DISCOVERY DISPUTE STATEMENT

Plaintiff Dexter Welch ("Plaintiff") hereby requests that the Court hold a hearing at its earliest convenience concerning Plaintiff's request for issue sanctions against Defendant Vanderbilt University Medical Center ("VUMC").

## I.    Discovery in Dispute and the Parties' Positions

### A.    Plaintiff's Position

Plaintiff seeks sanctions because VUMC intentionally violated several of the Court's orders, concealing key evidence going to its bad intent when applying the race-based adjustment to Plaintiff's kidney function scores at issue in this case, and the abbreviated case schedule does not allow for adequate remedial measures. Because of VUMC's violation of discovery orders, Plaintiff was deprived of the opportunity to question VUMC witnesses concerning the most prejudicial documents in this case. Plaintiff was further unable to obtain documents or depositions concerning VUMC's late-announced defense that Drs. Pinson and Balser agreed to Dr. Wilkins' recommendation to stop using the race-based coefficient not because it was discriminatory, but because VUMC doctors had allegedly already stopped using the coefficient, where none of those

persons were identified in initial disclosures or 30(b)(6) deposition testimony before October 16, 2024.

Plaintiff met and conferred with VUMC on several occasions and VUMC consistently stated any remedial discovery must be *at Plaintiff's expense*, and VUMC would not agree to allow Plaintiff additional or amended expert disclosures, or agree to any limits on VUMC's ability to move for summary judgment before remedial discovery is completed. Indeed, VUMC now opposes Plaintiff's request to serve an additional expert report from an expert who will consider the late-produced documents going to VUMC's reasoning for using the race-based coefficient. Plaintiff explained that VUMC's proposal was insufficient to cure the prejudice, and VUMC did not budge, making only vague offers to provide specific missing documents to be identified by Plaintiff, or reopen certain depositions. Those offers appear to have been hollow, however, because when Plaintiff told VUMC which depositions and documents it would want, VUMC agreed to provide only two of the witnesses, after the deadline to file summary judgment motions, and even then, only on the condition that Plaintiff would not bring this matter before the Court, arguing Plaintiff waited too long to ask.

VUMC's violation of multiple discovery orders, and unwillingness to even attempt to remediate the prejudice, warrants issue sanctions.[1]

---

[1] VUMC's response for the first time raises timeliness—not once during the parties meet and confer efforts did VUMC argue Plaintiff was untimely in raising VUMC's violation of discovery orders with the Court. The parties mutually scheduled multiple attempts to meet and confer, and Plaintiff should not be punished for doing so. Nonetheless, this is not a discovery motion that could arguably be untimely. It is a motion for sanctions resulting from the violation of discovery orders. Indeed, VUMC first disclosed that it withheld documents pursuant to an unavailable peer review privilege claim late on the evening of the last day of the discovery cutoff, giving Plaintiff no opportunity to challenge the baseless claim during the discovery period.

2

**1.      VUMC violated several of the Court's orders.**

VUMC violated the Initial Case Management Order [ECF No. 43], the Discovery Order [ECF No. 58], and the ESI Orders [ECF Nos. 61, 63.]. These collective violations significantly prejudiced Plaintiff's ability to conduct discovery. The concealed evidence mostly pertains to, and prevented Plaintiff from, developing evidence relating to whether VUMC had any plausible basis for calculating Plaintiff's kidney function scores differently solely because he is Black. Accordingly, VUMC's discovery misconduct warrants issue sanctions establishing that VUMC acted with specific intent to cause serious physical harm to Plaintiff in doing so.

**a.      The Initial Case Management Order.**

On July 25, 2024, the Court entered its Initial Case Management Order, setting an expedited trial date because of Plaintiff's medical condition, over VUMC's objection. *See generally* ECF No. 43. Therein, the Court ordered VUMC to make its initial disclosures no later than August 14, 2024. *Id.* at 7.

VUMC's initial disclosures failed to disclose the following key witnesses, at the center of VUMC's decision to stop using the race-based coefficient, detailed in the chart below.

| Name | Role |
|---|---|
| Dr. Ebele Umeukeje[2] | • **Assistant Professor of Medicine**. Involved in project considering whether to stop using the race-based coefficient, and advised on patient messaging. |
| Dr. Consuelo Wilkins | • **Senior Vice President, Office of Health Equity**. Recommended to VUMC leadership to stop using race-based coefficient. Venezia Decl., Exh. C (Wilkins Depo.) at 14:21–15:13; 29:24–30:25; 31:9–34:15. |

---

[2]      Plaintiff identified Dr. Umeukeje as a potential witness through his own investigation because she is referenced in VUMC articles and published a paper on the eGFR test.

| Dr. Jeffrey R. Balser | • **President and CEO**. Discussed Dr. Wilkins's recommendation to stop reporting race-based coefficient and provided final approval. *Id.* at 29:24–30:25; 31:9–34:15. |
|---|---|
| Dr. C. Wright Pinson | • **Deputy CEO and Chief Health System Officer**. Discussed Dr. Wilkins's recommendation to stop reporting race-based coefficient and provided final approval. *Id.*. |

The fact that Dr. Wilkins made a proposal which was considered and adopted by Dr. Balser and Dr. Pinson is inconsistent with VUMC published articles. *See* Venezia Decl., Exh. D (medical students and residents "developed and presented a proposal for the elimination of race-based eGFR at VUMC to Alp Ikizler, MD, director of the Division of Nephrology and Hypertension, and Julia Lewis, MD, professor of Medicine . . . the proposal was taken to and supported by W. Kimryn Rathmell, PhD, MD"); Exh. E ("Kostelanetz recently led a group of medical students, residents and faculty to successfully end the use of race as a variable in the calculation of eGFR at Vanderbilt.").

VUMC's omission of Dr. Wilkins, Dr. Wright, and Dr. Pinson meant that Plaintiff was unaware VUMC had not produced any documents from that decision-making process in response to Plaintiff's RFPs and had no ability to specifically request such documents be included in the follow-up ESI search by including Drs. Wilkins, Wright and Pinson as custodians for those ESI searches. The omission also prejudiced Plaintiff's ability to push back on VUMC's new assertion that it stopped using the race-based coefficient not because it was discriminatory, but "because it was not clear that it was being used," a claim first unveiled during Dr. Wilkins's deposition on October 16, 2024—just two days before the extended discovery cutoff. Venezia Decl., Exh. C (Wilkins Depo.) at 49:23-50:2. To be clear, Plaintiff had attempted to obtain discovery earlier on why VUMC stopped using the race-based coefficient, but the first witness VUMC presented on

the topic did not know why or when. The Court thus required VUMC to provide another witness on the topic, which was Dr. Wilkins. *See* ECF No. 71 at 13.[3]

VUMC's explanation for failing to timely disclose Dr. Wilkins is insufficient. VUMC argues only that, "as the case continued to develop and as additional information became known, VUMC supplemented its Initial Disclosures a second time to add [Dr. Wilkins]." Venezia Decl., Exh. Y at 1–2. This explanation does not, however, provide any justification as to why VUMC was unable to identify Dr. Wilkins in the timeframe ordered by the Court. VUMC defends its failure to disclose Dr. Balser and Dr. Pinson by asserting VUMC does not intend to rely on those witnesses for its defense, but VUMC most certainly does—it just seeks to introduce their thoughts and conduct through an intermediary: Dr. Wilkins. The failure to disclose Drs. Balser and Pinson deprived Plaintiff of the opportunity to cross-examine the actual decisionmakers, while VUMC attempts to submit evidence of the basis for its decisions through second-hand testimony from Dr. Wilkins. *Id.* at Exh. C (Wilkins Depo.), 74:5–7 ("The primary decision -- the primary point that struck Dr. Balser was that the nephrologists were not using this race-based report.").

### b. The Discovery Order.

On September 20, 2024, the Court entered an Order concerning several discovery matters (the "Discovery Order"). ECF No. 58. Among other things, the discovery order required that "prior to the deposition of a VUMC employee, VUMC is ordered to produce all documents compiled or located to date by that employee that are responsive to Plaintiff's RFPs." *Id.* at 4. VUMC failed to do so. Despite being instructed by its counsel to "provide every document that even potentially

---

[3]      VUMC did not amend its initial disclosures to add Dr. Wilkins until October 17, 2024, and never disclosed Dr. Balser or Dr. Pinson.

could have any bearing on a matter[,]" VUMC produced only 40 total emails prior to depositions, for six custodians, i.e., 6.66 emails per custodian.

That VUMC witnesses failed to conduct a good faith search for documents is evidenced by the Court's later-ordered ESI production (which VUMC opposed), which resulted in the production of more than 650 additional relevant documents, most or all of which should have been included in VUMC's original production. Indeed, VUMC witnesses systematically failed to turn over damaging emails in a manner and pattern that makes it difficult to believe the failure was the result of a good-faith oversight on the part of VUMC. *See, e.g.*, Venezia Decl., Exhs. F & G (emails concerning "educational" pamphlet to be distributed to patients that omits any reference to race being factor in VUMC's historical calculation of kidney function scores); H (email with Mayo Clinic doctor discussing findings from Mayo's race-neutral testing of its patients' kidney function scores); I (email from Vanderbilt professor recommending that different, race-neutral test be used at Vanderbilt to measure kidney function scores).

Further, Dr. Julia Lewis, longtime VUMC nephologist and a co-author of the paper that created the race-based coefficient, described locating relevant documents—yet those were not provided to Plaintiff prior to her deposition. *See, e.g.*, Venezia Decl., Exh. B (Lewis Depo.) at 12:20–14:5 (witness provided emails from a GFR folder and 10–20 additional relevant emails from a folder named "Sonya" to counsel for VUMC); ¶ 4 (Plaintiff was only provided four emails to which Dr. Lewis was a party prior to her deposition). Illustrative of this deficiency, VUMC 027954 is an email that Dr. Lewis forwarded to VUMC's counsel on August 29, 2024. Venezia Decl., Exh. J (In this email, discussing a presentation that proposed to stop use of the race-based coefficient, Dr. Lewis responded, "I know about it is politically correct scientifically and mathematically wrong But it is over a few mls of gfr in most cases so not worth a career"). VUMC, nonetheless,

first produced this email on October 18, 2024—weeks after Dr. Lewis's deposition concluded on October 2, 2024. *Id.* at ¶ 7.[4]

Similarly, Dr. T. Alp Ikizler, Director of VUMC's Division of Nephrology and Hypertension, testified that he provided emails concerning VUMC students approaching him about VUMC's use of the race-based coefficient. Venezia Decl., Exh. A (Ikizler Depo.) at 75:11–16 ("Q. . . . When did the students first come to you? A. I do not exactly remember the date, but it is definitely somewhere in 2020 or so. But we can look at the date because it's actually in the e-mails that I provided you guys."). Dr. Ikizler was deposed on October 1, 2024, however, at that time, VUMC had not produced these emails between Dr. Ikizler and VUMC medical students. Venezia Decl. ¶ 7. Again, VUMC produced these emails for the first time on October 18, 2024. *See, e.g., id.* at Exh. K (VUMC student email to Dr. Ikizler thanking him for the invitation to present her presentation on the race-based coefficient to the department); Exh. L (VUMC student email thanking Dr. Ikizler for his support on de-implementing reporting of race-modified eGFR scores).

This failure to produce relevant documents in VUMC's original production prior to depositions prejudiced Plaintiff's ability to effectively depose VUMC witnesses.

### c.    The ESI Orders.

On September 24, 2024, the Court ordered VUMC to conduct an ESI search and produce responsive documents, and to do so on a rolling basis, completing the production by October 18, 2024. ECF Nos. 61, 63. VUMC violated this order by (1) not producing any documents on a rolling basis, and (2) disclosing for the first time, on October 18, 2024, that it was withholding more than

---

[4]    VUMC now claims this document was withheld pursuant to a peer review privilege claim, but the document was produced with non-privileged documents on October 18, 2024, and never included in any privilege log.

150 relevant documents on the basis of a state-law peer review privilege not available in federal court, as recognized by numerous federal decisions, even in the Supreme Court.

On the first point, VUMC admits that it violated the Court's ESI Orders by not producing ESI documents on a rolling basis. VUMC explained: "We ultimately were not able to produce these particular documents on a rolling basis because of the tight timeframe in which we all were operating and the time at which we completed our review." Venezia Decl., Exh. O at 1. VUMC argues this was not prejudicial because even if it had produced on a rolling basis, it was impossible to produce any ESI documents before the depositions that occurred on the week of September 30, 2024. Not so. VUMC's argument misunderstands how discovery should proceed, i.e., VUMC's obligation to search ESI for responsive documents did not begin when the Court entered an order compelling the same, it arose from the Plaintiff's requests for production served on July 16, 2024. Nonetheless, on September 24, 2024, the Court ordered VUMC to produce ESI documents on a rolling basis with depositions scheduled through October 4, 2024. It should not have been impossible to produce a single document before those depositions. VUMC simply decided not to do so. In the parties' last meet and confer, VUMC's counsel confirmed that they did not even begin reviewing ESI documents until after October 4, 2024, when depositions were scheduled to be completed. *Id.* at ¶ 21.

On the second point, on October 18, 2024, VUMC produced a privilege log disclosing for the first time that VUMC withheld more than 150 relevant documents, asserting an inapplicable Tennessee state law peer review privilege. *Id.* at ¶ 8 & Exh. M. VUMC argues that it disclosed its peer review privilege claim in discovery responses served August 15, 2024, and again in a discovery statement filed September 6, 2024, but Plaintiff moved to compel after receiving those objections and prevailed, obtaining an order compelling documents be produced. *See* ECF No. 61.

Notwithstanding, merely asserting the objections is sufficient. A party withholding documents pursuant to a privilege claim must substantiate that privilege claim with a written privilege log, ideally no later than 30 days after serving the written objections. *See CommonSpirit Health v. HealthTrust Purchasing Group, L.P.*, No. 3:21-0460, 2022 WL 19403855, at *1–2 (M.D. Tenn. Oct. 17, 2022) ("at least one appellate court has held that Rules 26(b)(5) and 34 should be read together to require the responding party to provide a privilege log within 30 days of any assertion of privilege made in response to a request for production of documents").

Nonetheless, VUMC's privilege claim is baseless. Pursuant to Rule 501 of the Federal Rules of Evidence, "[q]uestions of privilege are to be determined by federal common law in federal question cases." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998); *see also University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) ("we cannot accept the University's invitation to create a new privilege against the disclosure of peer review materials"). "[F]ederal law does not recognize a peer review privilege and state privilege law does not apply in a case where subject matter jurisdiction is based on a federal question." *Coone v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:16-CV-481, 2017 WL 9476830, at *1 (E.D. Tenn. May 18, 2017); *see also Allgood v. Baptist Mem'l Med. Grp., Inc.*, No. 19-2323-JTF-TMP, 2020 WL 86455, at *2 (W.D. Tenn. Jan. 7, 2020), aff'd, No. 219CV02323SHMTMP, 2020 WL 821381 (W.D. Tenn. Feb. 19, 2020) (""[F]ederal courts have repeatedly held no parallel federal [peer review] privilege exists.") (collecting cases).

Mr. Welch's inclusion of Tennessee state law claims with his federal Title VI anti-discrimination claims does not alter the result. *Nilavar v. Mercy Health Sys.-W. Ohio*, 210 F.R.D. 597, 601 (S.D. Ohio 2002) ("where there are both federal and supplemental state law claims at issue, the federal common law of privileges controls as to the entire case") (citing *Hancock v.*

*Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992)). Not only is this binding Sixth Circuit precedent, it is also explicit Congressional intent, and law across the country. *See Hancock*, 958 F.2d at 1373 (holding that "[t]his approach appeared to be most consistent with the congressional policy that 'in nondiversity jurisdiction civil cases, federal privilege law will generally apply'" and that "[s]ince the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege.") (citing *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D. Cal. 1978 & H.R.REP. NO. 1597, 93d Cong., 2d Sess. 7 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7101.] & *Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *William T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3rd Cir.1982); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980)).[5]

VUMC's failure to produce ESI documents on a rolling basis in violation of the Court's order seriously prejudiced Plaintiff by depriving him of the opportunity to depose VUMC witnesses concerning any of the ESI documents. Examples of the withheld documents include:

---

[5]     VUMC's cases are not to the contrary. VUMC points to medical malpractice cases, or in other words, cases where the plaintiffs must at minimum prove state malpractice law was violated to win. Plaintiff's complaint, however, neither alleges nor sounds in medical malpractice. Plaintiff makes no allegations regarding standard of care. This Court has jurisdiction because Plaintiff argues VUMC's use of a racial classification to the detriment of its Black patients violates federal anti-discrimination law. It was well-established that no state law peer review privilege is available in this context, and no other reasonable conclusion could be reached when reviewing current caselaw.

| Witness | Example Emails |
|---------|----------------|
| Dr. Umeukeje | • Email inviting Dr. Umeukeje to attend presentation on stopping use of race-based coefficient, where Dr. Umeukeje responds that, "This is not my style at all." Venzia Decl., Exh. Q.<br><br>• Email where Dr. Umeukeje recommends removing any mention of race from patient notice because, "I believe that removing any mention of race in the situation will likely lead to less chances of mistrust in the healthcare system." *Id.* at Exh. R. |
| Dr. Lewis | • Email where Dr. Lewis tells resident not to criticize her co-author on the race-based coefficient study, Dr. Andrew Levey, "Just saying no need to make it sound like Andy Levey, who is an older guy, and worked hard on this should be made to look bad He is a good guy[.]"" *Id.* at Exh. S.<br><br>• Dr. Lewis emails her coauthors about VUMC's decision to stop reporting race-modified scores, and one of her coauthors replies, "Good grief. . . . Does Alp really believe there is no racial difference in average muscle mass?" *Id.* at Exh. T.<br><br>• Email where Dr. Lewis admits VUMC previously used a race-neutral alternative to the race-based coefficient, but "lack of reimbursement ended it." *Id.* at Exh. U. |
| Dr. Karp | • Email where Dr. Rathmell tells Dr. Karp, "I do share your concern about 'eliminating' race as a consideration in developing algorithms for clinical decision making." *Id.* at Exh. V. |
| Dr. Ikizler | • Email thread where Dr. Ikizler defends removal of race-based coefficient against criticisms from VUMC employee, characterizing the race-based coefficient as "unreliable." *Id.* at Exh. W. |

Again, because VUMC withheld these emails, and more than 100 other similar emails, on the basis of an inapplicable privilege, Plaintiff was unable to question VUMC's key witnesses about the most important documents in the case.

### 2. Issue sanctions are the minimum required to cure VUMC's violations.

Plaintiff requests that the Court enter issue sanctions against VUMC, establishing for the purposes of this action that, should Plaintiff succeed in establishing liability on the part of VUMC, that VUMC acted with the specific intent to cause serious physical harm to Plaintiff.

Rule 37 of the Federal Rules of Civil Procedure provides that for the failure to comply with a discovery order, the Court may impose a range of sanctions, including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The Court's authority extends to the ability to enter default judgment (terminating sanctions) against an offending party. However, "this sanction 'is a drastic step which should be resorted to only in the most extreme cases.'" *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) ("*Prime Rate*") (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983)). Thus, in considering whether to impose terminating sanctions, courts are to consider: "(1) Did the party act in bad faith? (2) Was the opposing party prejudiced? (3) Did the court give adequate warning? and (4) Could less drastic sanctions have ensured compliance?" *Prime Rate*, 930 F.3d at 769 (citing *Grange Mut. Cas. Co.*

*v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008)). Plaintiff believes the first three parts of this test are satisfied, however, because terminating sanctions are a last resort, Plaintiff recommends a lesser interim sanction at this time when discussing the fourth question,

**Bad faith.** VUMC violated the Initial Case Management Order, Discovery Order, and ESI Order, as outlined above. Again, VUMC failed to disclose witnesses at the core of its defense, failed to reasonably search for and produced documents responsive to Plaintiff's RFPs, failed to produce documents based on a claim of privilege that is objectively unreasonable, and failed to produce documents on a rolling basis and prior to depositions. *See, supra*, §§ 1(a)-(c). VUMC admits that it failed to produce ESI documents on a rolling basis as required by the Court, arguing only that it was unable to do so. But that does not avoid a finding of bad faith. *Prime Rate*, 930 F.3d at 769 (holding that argument that party was unable to comply with court's order insufficient to defeat finding of bad faith). As to VUMC's assertion of peer review privilege, bad faith in the context of the assertion of a legal position turns on whether there is a "substantial ground for difference of opinion," which exists when: "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Ritchie v. N.Y. Life Ins. Co.*, 2024 U.S. Dist. LEXIS 202579 at *6 (E.D. Ky. 2024) (quoting *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1019 (W.D. Tenn. 2000)). Based on this standard, VUMC's assertion of the peer review privilege also constituted bad faith. The issue is not one of first impression; it has been faced by many federal courts previously. There is no difference of opinion or split in the circuits; every federal court facing the issue, including the U.S. Supreme Court, rejected the existence of a federal peer review privilege when considering federal anti-discrimination claims.

**Prejudice to Plaintiff.** "The key to finding prejudice . . . is whether [a party] 'waste[d] time, money, and effort in pursuit of cooperation which [the other party] was legally obligated to provide.'" *Schafer v. City of Defiance Police Department*, 529 F.3d 731, 739 (6th Cir. 2008) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)). The prejudice to Plaintiff in this case is clear—Plaintiff was prevented from seeking documents and questioning witnesses on important documents because of VUMC's above-described violations of discovery orders, not to mention the countless hours and attorneys' fees and costs associated with addressing VUMC's violations of its discovery obligations and the Court's discovery orders.

**Adequate warning**. On June 25, 2024, and again on October 9, 2024, the Court warned the parties that it "may impose appropriate sanctions, including any of those authorized by . . . 37(b)(2)(A)" upon "failure to comply with . . . any discovery order[.]" ECF No. 71 (quoting ECF No. 43). This put VUMC on fair warning that violating the Court's discovery orders would result in the types of sanctions set out in Rule 37.

**Appropriate sanction**. As noted above, the Initial Case Management Order was entered with the backdrop of a dispute amongst the parties as to the appropriate case schedule. Plaintiff argued that his failing health merited an expedited trial, and VUMC (and UNOS) argued that the case should proceed in normal course. The Court ruled in Plaintiff's favor on this issue and any remedy for VUMC's violation of the Court's discovery orders should not require a continuance of the trial date. Again, such an order would reward VUMC's misconduct by giving it the case schedule it originally lobbied for. Thus, another order requiring compliance and reopening discovery is not an adequate remedy at this time.

This Court has the authority to find that, for the purposes of this action, if Plaintiff proves liability, VUMC acted with specific intent to cause serious physical harm to plaintiff. Fed. R. Civ.

Proc. 37(b)(2)(A)(i). This remedy allows the case to go forward on its current schedule and punishes VUMC for violating orders requiring it to produce documents concerning the intent element. At the same time, this sanction would not give Plaintiff more than he is entitled to or terminate the case—Plaintiff would still be required to prove that VUMC engaged in intentional discrimination, and prove the amount of his damages, issues largely not impacted by the evidence withheld by VUMC.

The Court might also preclude VUMC "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. Proc. 37(b)(2)(A)(ii). Such an order, however, does not work here because Plaintiff has been deprived of evidence relevant to proving his claims. Simply not allowing VUMC to present evidence of good intent does not remedy any prejudice to Plaintiff's ability to meet his burden of proof to show bad intent. Alternatively, the Court could stay the case to permit Plaintiff to re-take all of the deposition or issue contempt sanctions designed to force VUMC to comply with its discovery obligations. Fed. R. Civ. Proc. 37(b)(2)(A)(iv) & (vii). But such relief would actually penalize Plaintiff by delaying his day in court, as discussed above. Finally, the Court could issue terminating sanctions, such as entering judgment for liability in favor of Plaintiff. Fed. R. Civ. Proc. 37(b)(2)(A)(v) & (vi). Plaintiff, however, does not seek terminating sanctions as a remedy. Under the circumstances, Plaintiff's proposed sanctions under Rule 37(b)(2)(A)(i) is the most appropriate remedy.

### 3. Plaintiff's motion is timely.

VUMC argues for the first time in its portion of this joint statement that Plaintiff's request is untimely. VUMC never raised timing of a motion for sanctions in any of the meet-and-confer discussions, where Plaintiff thought the parties were working in good faith to resolve the disputed issues. Plaintiff took the time to meet and confer on several occasions, did not place artificial

deadlines on VUMC for responses, and provided VUMC as much time as it requested to prepare a response, mindful of and with every intent of complying with the Court's prior admonition to Plaintiff's counsel:

> With respect to Plaintiff's issues with VUMC, the Court finds it especially egregious that Plaintiff's counsel unilaterally imposed a Friday night deadline over an issue that was in no way an emergency. Counsel should not create emergencies where none exist. Further, there is nothing to be gained in rushing to file a discovery motion by a deadline when the opposing party has indicated a desire to resolve the issue. This approach increases costs for the parties and wastes the Court's resources. The Court understands that there was a deadline and that Plaintiff wished to respect that deadline, which the Court appreciates and is certainly the minimum standard to which all parties and their lawyers should adhere, but the Court instructs these particular parties under the circumstances of this case to focus their efforts first and foremost on resolution. The Court finds Plaintiff's counsel refusal to engage in discussions to resolve issues with VUMC because the "time to meet and confer … has passed" (Docket No. 68-3 at 1) to be out of line with the Court's order to "act courteously and professionally in the resolution of any discovery disputes" (Docket No. 43 at ¶ G).

ECF No. 71 at 3. In exchange for Plaintiff's professional courtesy, VUMC now attempts to avoid any review of its intentional violations of discovery orders because Plaintiff engaged in the meet and confer process, rather than immediately rushing to the Court with a motion. This argument must fail.

As a threshold matter, Plaintiff does not agree that the Court's previous orders required this motion to be filed by October 4, 2024, or October 18, 2024, because this is not a motion to compel discovery. This is a motion for issue sanctions related to VUMC's intentional violation of discovery orders, and one that Plaintiff has properly moved for and obtained during the discovery period.

Nonetheless, if the Court disagrees, it is true that the Court directed the parties to bring discovery disputes to the Court's attention by October 4, 2024, and then directed the parties to

raise issues concerning VUMC's ESI production by October 18, 2024. ECF Nos. 43 & 63. However, VUMC's conduct made that impossible. VUMC first informed Plaintiff it withheld over 150 documents on the basis of an inapplicable peer review privilege on the evening of October 18, 2024. Additionally, Plaintiff was unaware of Dr. Consuelo Wilkins before October 16, 2024, or have any way to know about Drs. Pinson and Balser's consideration of the race-based coefficient. It would have been impossible for Plaintiff to prepare and file a motion before midnight on October 18, 2024, and Plaintiff certainly would not have been able to satisfy the Court's meet and confer expectations. Plaintiff immediately challenged VUMC's privilege claim, sending a letter that weekend, and VUMC responded, expressing a willingness to discuss the issues. At that point, considering the Court's previous guidance, Plaintiff believed he was obligated to work in good faith to resolve pending discovery issues before presenting the Court with a serious sanctions request.[6]

## VUMC DISCOVERY DISPUTE RESPONSE

VUMC has gone to extraordinary lengths to provide Welch the documents, the deponents, and the information that he has requested. While Welch begins his submission with a contention that VUMC "concealed" evidence related to its decision to estimate glomerular filtration rates using the race-based coefficient, the body of Welch's submission establishes otherwise. VUMC consistently provided to Welch the documents and the depositions that he requested. Indeed, VUMC made sixteen productions of over 37,000 pages of documents and presented seven witnesses for deposition. Some of these productions necessarily fell after certain depositions. This

---

[6] This timing is instructive of another point. VUMC says that because it produced documents subject to a peer review privilege claim on October 29, 2024, there is no prejudice. Plaintiff's expert disclosures were due on October 25, 2024, with an extension for one of the reports to October 28, 2024, and Plaintiff was thus unable to show potential expert witnesses evidence of VUMC's bad intent.

was not because VUMC engaged in improper conduct but rather because five depositions were scheduled for dates between September 25, 2024, and October 4, 2024, when the Court on September 24, 2024, ordered VUMC to review 15,540 electronic documents. Welch did not request to reschedule the depositions. Nevertheless, once VUMC produced the documents, it repeatedly offered to reopen depositions.[7] Welch did not ask VUMC to produce additional documents and did not ask VUMC to reopen depositions -- that is, until December 11, 2024. Even then, VUMC offered to reopen depositions and produce additional documents, as detailed in Section C. Any issues that Welch now faces are of his own making and from his own delay, and VUMC should not be forced to engage in additional discovery beyond what it has offered and should not be sanctioned for going to great lengths to meet its discovery obligations.

### A.    Welch Did Not Timely Raise These Discovery Issues.

The Court established deadlines by which the parties were to bring discovery issues to its attention. In the Initial Case Management Order, the Court directed the parties to bring discovery issues to its attention by October 4, 2018. (Docket Entry 43 at 9). The Court entered a Second Modified Case Management Order, after it instructed VUMC to review 15,540 electronic documents. (Docket Entries 61 and 63). Therein it directed the parties to bring discovery issues regarding the electronic documents to the attention of the Court by October 18, 2024. (*Id*.). The issues raised herein were known to Welch on or before October 18, 2024. VUMC first asserted the peer review privilege on August 15, 2024; Welch completed VUMC fact witness depositions

---

[7] The reopening of depositions was contemplated by the Court. Indeed, in the context of addressing Welch's request for electronic discovery, the Court stated: "Finally, **any party may request additional time to resume a deponent's deposition based on later-produced ESI**." (Docket Entry 58 at 4 (emphasis in original)). The Court and the parties thus understood that, given the way the case was proceeding, reopening depositions could be warranted. VUMC took this directive to heart and offered to reopen depositions.

on October 4, 2024; Welch completed VUMC's corporate representative depositions on October 16, 2024; and VUMC produced electronic documents on October 18, 2024. While it would have taken Welch some time to review the electronic documents, it would not have taken two months. Nevertheless, two months have passed since October 18, 2024, and despite requests from VUMC, Welch has not explained why he delayed in raising these issues with the Court until after the expert discovery deadline and shortly before the dispositive motion deadline. And, while Welch correctly contends that the parties have engaged in discussions regarding these issues, the discussions have not taken months and do not explain his lengthy delay in raising these issues with the Court. By way of example only, Welch raised the issue of VUMC searching additional electronic documents on November 8, 2024. In response, VUMC suggested that Welch provide dates and search terms. Yet, Welch did not provide dates or search terms for over a month, or until December 11, 2024.

When a receiving party contends that discovery is deficient or improper, the receiving party must timely raise the issues with the court. *Wischermann Partners, Inc. v. Nashville Hosp. Capital LLC*, 2019 WL 4415618, at *4 (M.D. Tenn. Sept. 16, 2019); *see Craig-Wood v. Time Warner N.Y. Cable LLC*, 549 F. App'x 505, 508 (6th Cir. 2014) ("In general, a district court does not abuse its discretion by denying an untimely motion to compel that violated unambiguous discovery deadlines."). The court may deny as untimely a discovery motion filed after the deadline. *U.S. v. Florence*, 2020 WL 5797987, at *3 (M.D. Tenn. Sept. 29, 2020); *EEOC v. Tepro, Inc.*, 2014 WL 12562856, at *3 (E.D. Tenn. Aug. 29, 2014) ("Absent a showing of exceptional circumstances or good cause, motions filed during the last few days of a discovery period are not timely as they cannot be briefed and considered without, in effect, extending the discovery period.").

Welch did not timely raise these issues. He was aware of the issues yet inexplicably sat on them for at least two months in a matter that is proceeding on an expedited basis. All the while

multiple deadlines passed, including the fact discovery deadline, the expert discovery deadline, and (soon) the dispositive motion deadline. The fact that Welch seeks sanctions does not change anything. Welch has raised a discovery dispute. Welch has not provided an explanation for his delay, and the Court, therefore, should reject the issues that Welch raises through his submission.[8]

**B.**     **VUMC Did Not Violate Any Court Order, Certainly Not Intentionally.**

**1.**     **VUMC Complied with the Initial Case Management Order.**

Welch did not serve an interrogatory on VUMC that inquired into the individuals with knowledge in this matter. Indeed, Welch served three interrogatories on VUMC on September 4, 2024, and those interrogatories did not inquire into individuals with knowledge. VUMC provided interrogatory answers on October 4, 2024, and supplemented those answers on October 17, 2024. Welch did not raise an issue with VUMC's interrogatory answers or supplemental answers and did not suggest that VUMC should have identified individuals with knowledge in response.

Federal Rule of Civil Procedure 26(a)(1)(A) requires that parties identify in their initial disclosures "each individual . . . that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A). As required by the Initial Case Management Order (Docket Entry 43

---

[8] Welch's contention that VUMC did not previously raise the issue of timeliness is incorrect. VUMC raised the issue of the timeliness with respect to Welch's complaints regarding its assertion of the peer review privilege through its correspondence dated October 21, 2024. VUMC stated: "Your correspondence primarily complains about VUMC withholding certain documents based on the peer review privilege. This issue should have been raised long ago, as you have been on notice of VUMC's peer review privilege objections since at least August 15, 2024." This correspondence is attached to the Declaration of Matthew L. Venezia. This aside, when Welch first raised the general concept of reopening the depositions of unidentified VUMC employees on October 22, 2024, and when Welch first raised the issue of VUMC searching the electronic documents of one additional VUMC employee on November 8, 2024, VUMC did not object on timeliness grounds. The parties had plenty of time to complete these tasks. Welch, however, waited to identify the depositions that he wanted to reopen and to provide dates and search terms for the additional electronic documents that he wanted searched until December 11, 2024. Welch sat on his hands, and his delay in making these requests until December 11, 2024, is indeed untimely.

at 7) and the Rules, VUMC served its initial disclosures on August 14, 2024. VUMC identified

eight individuals that VUMC may use to support its defenses. Subsequently, on August 21, 2024,

VUMC supplemented its initial disclosures by adding an additional individual, Dr. Julia Lewis.

Then, as the case developed and as additional information became known, VUMC supplemented

its initial disclosures a second time on October 17, 2024, to add two individuals, Drs. Ebele

Umeukeje and Consuelo Wilkins. Welch already had deposed all of these medical providers, on

October 2, 2024, October 3, 2024, and October 16, 2024, respectively, and VUMC did not want

to be deprived of the ability to call them at trial. VUMC has identified the individuals it may use

to support its defenses and has supplemented its identification, as appropriate. *Wischermann*, 2019

WL 4415618, at *3 (noting a duty to supplement initial disclosures).

Welch complains regarding VUMC's decision not to identify Drs. Jeffrey Balser and

Wright Pinson in its initial disclosures. Dr. Balser is the President and CEO of VUMC, and Dr.

Pinson is the Deputy CEO and Chief Health System Officer for VUMC. Dr. Wilkins testified that

she conferred with Drs. Balser and Pinson via telephone, among other individuals, when VUMC

made the decision to stop using the race-based coefficient when estimating glomerular filtration

rates. (Deposition of Dr. Consuelo Wilkins ("Wilkins Dep.") at 29:21-33:18).[9] VUMC will not

use Drs. Balser or Pinson "to support its claims or defenses" and therefore was not under an

obligation to identify them.[10] Likewise, while Welch contends that he was deprived of the ability

to depose Drs. Balser and Pinson, he had not actually requested their depositions -- that is, not until

---

[9] Excerpts of these depositions are attached to VUMC's Notice of Filing as collective <u>Exhibit A</u>.

[10] Welch contends that VUMC should have disclosed Drs. Balser and Pinson because it will
"introduce their thoughts and conduct through Dr. Wilkins." This contention does not find any
support in the plain language of Federal Rule of Civil Procedure 26(a)(1)(A).

December 11, 2024.  Welch should not be heard to complain about being deprived of something that he did not request until extremely late in the case and after all discovery deadlines expired.

Welch also complains that VUMC did not identify Dr. Wilkins earlier in the lawsuit.  As the Court is aware, this matter is proceeding on an expedited schedule, with the discovery period lasting approximately two months.  Because of this, when Welch inquired into various topics, VUMC at times had to actively search for the information and the individuals with knowledge and report back to Welch.  Here, Welch requested that a VUMC corporate representative testify regarding "Vanderbilt's decision to ban use of the race-based coefficient . . . ."  (Docket Entry 70 at 4).  Initially, VUMC presented Dr. Alp Ikizler on this topic on October 1, 2024.  Welch expressed dissatisfaction with Dr. Ikizler's handling of the issue, and VUMC explored the issue further, only then learning of the telephone discussion among Drs. Balser, Pinson, and Wilkins.[11] VUMC thereafter presented Dr. Wilkins for deposition and supplemented its initial disclosures to identify Dr. Wilkins.  This is precisely how discovery should proceed -- that is, as requested information is located and learned, it promptly is shared.  There simply is nothing improper or nefarious regarding the manner in which VUMC investigated and provided Welch information. While Welch contends that he was prevented from reopening depositions or requesting documents, he was not.  VUMC offered to reopen depositions.  And, when Welch asked VUMC to search the electronic documents of Dr. Wilkins on November 8, 2024, VUMC asked Welch to send a date

_____

[11] Welch contends that Wilkins' testimony regarding her telephone conversation with Drs. Balser and Pinson contradicts statements by VUMC.  It does not.  Dr. Wilkins testified that VUMC medical students raised the issue of estimating glomerular filtration rates using the race-based coefficient with various medical providers, that she discussed the issue with Drs. Balser and Pinson as part of a series of recommendations from her office, and that VUMC ultimately stopped using the race-based coefficient.  (Wilkins Dep. at 28:3-31:14).

range and search terms.[12]  Welch did not send a date range or search terms -- that is, until December 11, 2024.  VUMC's conduct in this regard was proper.  VUMC has complied with its discovery obligations and continually has provided Welch access to relevant documents, deponents, and information.

### 2.    VUMC Complied with the Discovery Order.

VUMC requested that multiple VUMC employees collect documents in their possession responsive to discovery requests from Welch.  The VUMC fact witnesses who have testified confirmed their efforts.  By way of example, Dr. Ikizler testified: "But I did look at the chart in the Outlook with the technology capability that I have and -- as far as it goes and when those hits were made, and then I forward them to my counsel."  (Deposition of Alp Ikizler, M.D. at 121:13-123:13).  Likewise, Dr. Seth Karp testified: "But I was quite interested in finding everything I possibly could in the interest of transparency and honesty and fairness, which was what -- which was what I was instructed to do and which is what I did."  (Deposition of Seth Karp, M.D. at 68:4-70:1).  When asked whether she "searched [her] emails for documents that might be relevant in this case," Dr. Lewis confirmed: "I did."  (Deposition of Julia Lewis, M.D. at 12:10-19).

Welch did not initially request that VUMC perform an electronic document search.  When Welch subsequently made this request, the parties brought the issue to the Court's attention, and the Court dictated the parameters of the search on September 24, 2024.  (Docket Entry 61).  Four days prior, on September 20, 2024, the Court enumerated its expectations regarding the production of documents and the depositions of fact witnesses.  (Docket Entry 58 at 4).  The Court said: "**In addition**, prior to the deposition of a VUMC employee, VUMC is ordered to produce all

---

[12] Upon inquiry from VUMC, Dr. Wilkins reported that she did not have any relevant documents in her possession, meaning that relevant documents, if any, only could be obtained through an electronic document search.

documents compi[l]ed or ___located to date by that employee___ that are responsive to Plaintiff's RFPs."
(*Id.*) (emphasis added). VUMC complied. It produced the responsive and nonprivileged
documents that each VUMC employee ___located to date___ before the deposition of that employee.

Welch complains that VUMC subsequently located and produced additional documents
through the electronic document search and contends that this establishes the inadequacy of the
searches performed by the VUMC employees and that the undersigned counsel improperly
withheld responsive nonprivileged documents. His contention is flawed. First, a robust electronic
document search that covers five years and contains thirty-two search terms necessarily will
uncover documents beyond those located through a detailed hand collection. Second, multiple of
the VUMC fact witnesses testified regarding the propriety of their efforts to collect responsive
documents. Third, putting aside that the undersigned counsel would not improperly withhold
documents, it would be illogical for them to improperly withhold documents only to subsequently
produce them. Indeed, Welch refers the Court to multiple documents that he contends are
damaging for VUMC, documents that he has only because VUMC produced them. Welch cannot
rationally complain about VUMC withholding documents when Welch has the documents.

Welch also complains that Drs. Ikizler and Lewis testified that they collected and provided
documents to the undersigned counsel and that the undersigned counsel did not, in turn, produce
all of the documents to Welch. Welch's contention is flawed. First, Welch assumes that every
document that Drs. Ikizler and Lewis provided to the undersigned counsel was relevant. They
were not. The undersigned counsel cannot provide the detailed directions that it gave multiple
VUMC employees regarding their document collection efforts without revealing attorney-client
privileged communications. However, the undersigned counsel can confirm that they always
instruct those collecting documents to provide every document that even potentially could have

any bearing on a matter. That means, and meant here, that certain of the documents were not relevant or responsive and did not need to be produced. Second, Welch references two student emails to Dr. Ikizler (VUMC 027953 and 028380) and complains that VUMC did not produce them until October 18, 2024. Welch necessarily assumes that Dr. Ikizler located these student emails before his deposition on October 1, 2024. His assumption is wrong. Dr. Ikziler did not locate these student emails in his hand collection. Rather, VUMC located the student emails through its electronic document search, and VUMC produced the documents by the Court-ordered deadline of October 18, 2024. (Docket Entry 63). VUMC thereafter offered Welch the opportunity to reopen Dr. Ikizler's deposition, and he declined. Finally, VUMC did initially withhold a limited number of documents based on its assertion of the peer review privilege. The email from Dr. Lewis that Welch references (VUMC 027954) initially was withheld on privilege grounds as it is an email among members of a quality improvement committee -- namely, the Nephrology Diversity Committee -- regarding the potential elimination of the race-based coefficient and its impact on the quality of healthcare services and patient care.[13] This aside, VUMC produced all documents over which it initially claimed peer review protection to avoid lengthy briefing on the peer review privilege and to avoid burdening the Court. VUMC likewise informed Welch that he could reopen depositions, yet he chose not to do so -- that is, until December 11, 2024.

VUMC complied with the Court's September 20, 2024, Order. VUMC employees initially hand collected documents and provided those documents to VUMC. VUMC, in turn, produced

---

[13] Welch is correct that VUMC did not include this particular email in the privilege log. VUMC initially withheld this email because it believed that the email warranted peer review protection. Upon further evaluation of the email, VUMC determined that the email did not warrant peer review protection and produced it on **October 18, 2024**. VUMC consistently has worked to critically evaluate all decisions that it has made in this case. After producing the document, VUMC offered to reopen depositions, including the deposition of Dr. Lewis.

these documents to Welch, all before the depositions of the relevant VUMC employees.  In so doing, VUMC complied with the Court's directive: "**In addition**, prior to the deposition of a VUMC employee, VUMC is ordered to produce all documents compi[l]ed or ***located to date by that employee*** that are responsive to Plaintiff's RFPs."  (Docket Entry 58 at 4) (emphasis added).

### 3. VUMC Complied with the Electronic Discovery Order.

#### a. Electronic Document Production

On September 24, 2024, the Court ordered VUMC to conduct an electronic document search according to parameters that were outlined in the Order, resulting in 15,540 documents that VUMC was required to review and produce, if warranted.  (Docket Entry 61).  The parties agreed that VUMC would produce responsive documents by October 18, 2024, and moved the Court to enlarge the discovery deadline for the production of these documents.  (Docket Entry 62).  The Court enlarged the deadline to October 18, 2024.  (Docket Entry 63).  VUMC worked diligently to review and produce the documents, including by increasing the number of reviewers to eight, along with two supervisors and the undersigned counsel.  Counsel and the reviewers worked long hours and at a fast pace to review and produce the documents by October 18, 2024.  VUMC ultimately was not able to produce these documents on a rolling basis because of the tight timeframe in which it was operating and the sheer pace of the review.  Julie Anne Halter serves as the head of the K&L Gates LLP electronic discovery team and operated as the lead of this document review.  Her Declaration explains in detail that a rolling production of these documents would have jeopardized completing the full production by October 18, 2024, including because of the additional steps that must be taken with each production.  (Declaration of Julie Anne Halter ("Halter Dec.") ¶¶ 4-10).  VUMC incorporates her full explanation herein.  Contemporaneous with

its electronic document review, VUMC did produce the documents that it was able to produce on a rolling basis, including 1,171 pages of documents on September 27, 2024, and October 4, 2024.

Welch contends that VUMC should have initiated this electronic document search when it first received discovery requests on July 16, 2024. He is wrong, and his contention in this regard is troubling given that Welch did not even suggest that a robust electronic document search was warranted until the parties were well into the discovery period. Welch also complains that the undersigned counsel did not begin their review of the electronic documents until after a week of depositions that ran from September 30 through October 4, 2024. Welch misunderstands the process. The VUMC electronic discovery team did not sit on its hands until October 4, 2024. Document review protocols were created, reviewers were identified and educated, and reviewers began their review. (Halter Dec. ¶ 6). It was not until the reviewers completed some of the first-level review that the undersigned counsel could begin their second-level review.

VUMC went to great lengths to produce documents on a rolling basis and in advance of the fact witness depositions that ran from September 25, 2024 to October 4, 2024. For the reasons detailed in Ms. Halter's Declaration, VUMC simply was not able to begin a rolling production of these electronic documents within days of an Order requiring their production. The inability to review and produce the electronic documents before the VUMC employee depositions placed VUMC at a great disadvantage because VUMC was forced to present witnesses who did not have the opportunity to review and consider their documents and emails that subsequently would be produced. As for Welch, VUMC repeatedly offered to reopen depositions so that Welch could inquire into the electronic documents. Welch did not ask VUMC to reopen a single deposition -- that is, until December 11, 2024. Welch's affirmative decision not to reopen any deposition was his to make, and he cannot now claim prejudice.

### b.     Peer Review Privilege

Welch also complains that VUMC initially withheld certain documents on peer review privilege grounds. Three points merit mention. First, VUMC notified Welch that it was asserting the peer review privilege, including through discovery responses dated August 15, 2024, a Discovery Dispute Statement filed on September 6, 2024 (Docket Entry 52-1 at 18, 21, 22), and discovery responses dated October 4, 2024. Welch did not challenge VUMC's assertion of the privilege, and VUMC did not have reason to believe that Welch subsequently would challenge its assertion of the privilege. Second, VUMC had a good faith basis to assert the peer review privilege and still very much contends that it applies to the relevant documents in this context. While VUMC ultimately produced the privileged documents, it was not a concession of the issue, and VUMC expressly stated that it was not waiving the privilege when it produced the documents. VUMC produced the privileged documents to avoid lengthy briefing on the peer review privilege in a shortened timeframe and to avoid burdening the Court with another discovery issue.

As an initial matter, there is no prohibition on application of the peer review privilege in federal question cases. *See Veith v. Portage Cnty.*, 2012 WL 4850197, at *3-4 (N.D. Ohio Oct. 11, 2012) (citing *Jaffee v. Redmond,* 518 U.S. 1, 10-12 (1996)) (recognizing a federal peer review privilege in a 42 U.S.C. § 1983 and medical malpractice action); *see also Gulley v. Lapaglia*, 2014 WL 223646, at *1 (E.D. Tenn. Jan. 21, 2014) (citing *Veith*, 2012 WL 4850197, at *4-5) (noting that an "action's correlation to medical treatment may weigh in favor of finding that the materials at issue are protected by a peer-review privilege," even in a civil rights case); *Miller v. Uchendu*, 2016 WL 11784214, at *5 (W.D. Tenn. Mar. 21, 2016) ("Particularly, other federal courts have recognized a peer review privilege in medical malpractice actions."); *c.f. Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 2008 WL 11342545, at *4-5 (E.D. Tenn. Sept. 24,

2008) (citing *Univ. of Penn. v. EEOC*, 493 U.S. 182, 189 (1990)) (stating in a federal question case by virtue of the Health Care Quality Improvement Act that the court's ruling should *not* "be taken as a wholesale rejection of Tennessee's Peer Review Privilege in this case, nor in this Court").[14]

Further, even in the absence of a ***federal*** common law or statutory privilege, courts in federal question cases still "must determine whether to recognize the [relevant] ***state privilege***." *Stratienko*, 2008 WL 11342545, at *4 (emphasis added); *John B. v. Goetz*, 879 F. Supp. 2d 787, 901 (M.D. Tenn. 2010) (citing *Jaffee*, 518 U.S. at 12-13) ("Federal courts are not required to recognize state law privileges when deciding cases arising under federal law, but the presence of a state law privilege must be considered, particularly where a significant number of states recognize such a privilege."); *Miller*, 2016 WL 11784214, at *5 (same). In determining whether to recognize a federal peer review privilege, courts have determined that they must weigh certain factors and make a case-by-case determination. *See Veith*, 2012 WL 4850197, at *4 (citing *Jaffee*, 518 U.S. at 10-12) (weighing three factors "(1) whether the privilege serves private and public interests; (2) the evidentiary benefit that would result from denial of the privilege; and (3) recognition of the privilege among the States"); *CSX Transp., Inc. v. Tenn. Dept. of Revenue*, 2020 WL 13443299, at *3 (M.D. Tenn. Sept. 8, 2020) (citing *Farley v. Farley*, 952 F. Supp. 1232, 1237-38 (M.D. Tenn. 1997)) (weighing five factors "(1) the likelihood that disclosure of confidential information will discourage citizens from providing information to the government; (2) the extent

---

[14] Welch contends that the Supreme Court "rejected the existence of a federal peer review privilege when considering federal anti-discrimination claims." The Supreme Court did not "reject" the federal peer review privilege and instead simply declined to recognize the privilege in a Title VII case, only after noting that 42 U.S.C. §§ 2000e-8 and 2000e–9 "d[id] not carve out any special privilege relating to peer review material." 493 U.S. at 191. This is not a Title VII case nor is it a case concerning the tenure review process. Indeed, a sister court within this circuit *has recognized* a federal peer review privilege in a civil rights case concerning the defendants' provision of medical care. *Veith*, 2012 WL 4850197, at *4. Welch's statement that the Court broadly "rejected the existence of a federal peer review privilege" is inaccurate.

to which disclosure will thwart or undercut significant regulatory processes; (3) the extent to which state authorities have already waived the privilege that they assert; (4) the federal policies prioritizing and facilitating full development of the facts in federal litigation; and (5) the subject plaintiff's need for disclosure"). Accordingly, Welch's contention that the Court in *University of Pennsylvania* foreclosed assertion of a peer review privilege in federal question cases is incorrect. *See* 493 U.S. at 189-90 (construing Title VII and holding that Congress "d[id] not carve out any special privilege relating to peer review materials" concerning tenure determinations).

Finally, when Welch raised a concern regarding VUMC's assertion of the peer review privilege, the parties discussed the issue, and VUMC ultimately agreed to produce the documents. The vast majority of documents that VUMC withheld on peer review privilege grounds were collected through the electronic document process and would have been produced on October 18, 2024, with the other electronic documents. Welch raised an issue with VUMC's assertion of the privilege on October 19, 2024, and VUMC ultimately produced the privileged documents on October 28, 2024. No depositions took place between October 19 and October 28, 2024. Welch now has the documents that are protected by the privilege, and VUMC has offered to reopen depositions, causing VUMC to question the rationale behind the complaints.[15]

---

[15] Welch suggests that VUMC should have provided a privilege log sooner. The Federal Rules of Civil Procedure do not state when a party must provide a privilege log. Sister courts have noted that parties should produce a privilege log upon the completion of production or the close of discovery. *See, e.g.*, *Jones v. Varsity Brands, LLC*, 2022 WL 1913043, at *4 (W.D. Tenn. June 3, 2022) (stating that "[a]lthough th[e privilege logs] were produced after the discovery deadline, this delay was minimal considering the size of the production and the limited time defendants had to complete it"); *England v. Advance Stores Co., Inc.*, 2009 WL 10681546, at *5 (W.D. Ky. June 4, 2009) (holding that privilege log was not untimely where a party objected to the opposing party's discovery requests as overbroad and only produced its log following the court's ruling); *Gaddis v. City of Detroit*, 2020 WL 2085068, at *3 (E.D. Mich. Apr. 30, 2020) (ordering parties to produce privilege logs three days after the close of discovery). VUMC repeatedly raised the peer review privilege. And, the Court ordered VUMC to produce the electronic documents on September 24, 2024 (Docket Entry 61), and VUMC provided a privilege log on October 18, 2024.

### C.   Welch Improperly Seeks an Advisory Opinion from the Court.

The Constitution grants Article III courts the power to decide cases or controversies, meaning that there must be a "genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Holman v. Vilsack*, 582 F. Supp.3d 568, 576 (W.D. Tenn. Jan. 26, 2022) (quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020)). "[F]ederal courts must ensure that a true dispute persists throughout the case." *Jarrett v. U.S.*, 79 F.4th 675, 678 (6th Cir. 2023) (citing *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011)). "Federal courts lack power 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Jarrett*, 79 F.4th at 678 (quoting *North Carolina v. Rice*, 404 U.S. 233, 246 (1971)). "They may resolve only 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an [advisory] opinion.'" *Jarrett*, 79 F.4th at 678 (quoting *Rice*, 404 U.S. at 246). The prohibition on advisory opinions extends to discovery disputes. *ChampionX, LLC v. Resonance Sys., Inc.*, 2023 WL 11904033, at *1 (E.D. Tenn. July 12, 2023) ("In light of the parties' agreement, the Court finds their discovery dispute over the number of depositions **MOOT**."); *Santoni v. Mueller*, 2021 WL 6752310, at *1 (M.D. Tenn. Sept. 3, 2021) (denying motion to compel because "Defendant's agreement to produce the entire archive renders the Plaintiff's motion to compel moot"); *Hedges v. Bittinger*, 2019 WL 11097079, at *2 (N.D. Ohio Oct. 23, 2019) ("First, as an agreement concerning discovery has been reached by the parties concerning these communications, the court considers the issue moot and tantamount to an advisory opinion."); *Estate of Patterson v. Contract Freighters, Inc.*, 2019 WL 2880981, at *3 (W.D. Ky. July 3, 2019) ("To determine whether the attorney-client privilege properly applies and whether such privilege has been waived, the Court

must first have a situation to which it can apply the law. The province of the federal courts is to adjudicate actual disputed, not to issue advisory opinions."); *Vick v. Bernard*, 2019 WL 5061049, at *3 (E.D. Tenn. Apr. 3, 2019) (denying as moot motion to compel where defendants included in their response to plaintiff's motion for sanctions the discovery responses the plaintiff claimed were untimely); *Donnelly Corp. v. Guardian Indus. Corp.*, 2007 WL 269418, at *1 (E.D. Mich. Jan. 26, 2007) ("Because the parties resolved this issue prior to the hearing Plaintiff's Motion To Compel Discovery And For Sanctions is **denied** as moot as it pertains to requests for supplemental interrogatory answers.").

Welch's discovery dispute statement presents issues regarding the timing of VUMC's document production, his ability to question VUMC employees regarding the documents, and VUMC's assertion of the peer review privilege. These issues are moot, and Welch is requesting an advisory opinion from the Court. VUMC produced all responsive documents, VUMC offered to reopen VUMC witness depositions, and VUMC produced the documents that are protected by the peer review privilege. On December 11, 2024, Welch for the first time asked VUMC to reopen the depositions of Drs. Lewis and Wilkins, to depose Drs. Balser and Pinson, and to conduct electronic searches of the documents of Drs. Balser, Pinson, and Wilkins. VUMC has agreed to do what it consistently said it would: (1) reopen the deposition of Dr. Lewis; (2) reopen the Federal Rule of Civil Procedure 30(b)(6) deposition of Dr. Wilkins; and (3) run search terms across Dr. Wilkins' electronic documents during the relevant timeframe.[16] Welch preferred to proceed with

---

[16] VUMC did not offer Welch the ability to depose Drs. Balser and Pinson or to search their electronic documents for four reasons. First, Dr. Wilkins testified regarding her telephone conversation with Drs. Balser and Pinson, and the additional depositions would be cumulative. Second, VUMC offered to search Dr. Wilkins' electronic documents, which necessarily would encompass any electronic communications Dr. Wilkins had with Drs. Balser and Pinson. Third, Welch did not request these depositions or documents until December 11, 2024, despite knowing

this discovery dispute.  There is nothing more for VUMC to do as it has bent over backwards to provide Welch the documents, the deponents, and the information that he has requested.  Indeed, VUMC has offered to permit Welch to conduct discovery after the expert discovery and dispositive motion deadlines.  There likewise is nothing more for the Court to do.  Documents have been provided, witnesses have been made available, and offers of additional documents and witnesses have been made.  The Court, therefore, should deny Welch the relief he seeks first because it is unwarranted and second because Welch seeks an impermissible advisory opinion from the Court.

### D.    Sanctions Are Not Warranted.

Before imposing sanctions under Federal Rule of Civil Procedure 37, courts must consider: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary has been prejudiced; (3) whether the allegedly disobedient party was warned that failure to cooperate could lead to sanctions, and (4) whether less drastic sanctions were imposed or considered.  *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).

Regarding the first factor, "'[w]illfulness, bad faith, or fault' can only be found where the party to be sanctioned ha[s] displayed 'an intent to thwart judicial proceedings or a reckless disregard for the effect of [its] conduct on those proceedings.'"  *Direct Line Corp. v. Carrington*, 2012 WL 3263920, at *1 (M.D. Tenn. Aug. 9, 2012) (citations omitted).   A party's supplementation of a prior document production or written responses is not indicative of bad faith.[17]  Regarding the fourth factor, a court may order "measures no greater than necessary to cure

---

of the telephone conversation since October 16, 2024.  And, fourth, these depositions would take Welch beyond the ten-deposition limit.  FED. R. CIV. P. 30(a)(2)(A)(i); (Docket Entry 58 at 3).

[17] *See St. Paul Fire & Marine Ins. Co. v. ABG Caulking Contractors, Inc.*, 2006 WL 8457584, at *6 (M.D. Tenn. Dec. 20, 2006) (finding insufficient evidence of bad faith when a party failed to "meet its duty, under Rule 26 and Rule 37(c)(1), to respond completely to all discovery requests" since the party "produced the documents," and its actions "are consistent with a good faith desire to comply with its duties"); *see Bio-Med. Applications of Tenn., Inc. v. CIGNA Healthcare of*

the [alleged] prejudice." *Kean v. Brinker Int'l, Inc.*, 2024 WL 1815346, at *12 (M.D. Tenn. Apr. 25, 2024) (declining to award issue sanctions where "[v]irtually all of the measures the plaintiff requests are vastly disproportionate to the prejudice he might have suffered"). Discovery sanctions are unwarranted where a party has suffered no prejudice or where the opposing party timely has cured the relevant objection. *See Jones v. Wiseman*, 2019 WL 12758147, at *3 (W.D. Tenn. May 24, 2019) (holding that Rule 37 sanctions were "not warranted on prejudice grounds" where a party disclosed a fact witness "the day that discovery closed"); *Grant v. Shaw Env't, Inc.*, 2012 WL 1059944, at *2 (E.D. Tenn. Mar. 28, 2012) (affirming denial of pre-judgment interest under Rule 37 where "th[e] defendant had not demonstrated the existence of prejudice flowing from plaintiff's failure to disclose"); *Donnelly Corp. v. Guardian Indus. Corp.*, 2007 WL 269418, at *1 (E.D. Mich. Jan. 26, 2007) ("Because the parties resolved this issue prior to the hearing[,] Plaintiff's Motion . . . is denied as moot as it pertains to requests for supplemental interrogatory answers.").

First, VUMC did not fail to cooperate with discovery and certainly did not exhibit bad faith. VUMC went to great lengths to provide to Welch the documents, the deponents, and the information that he has requested on an expedited basis. VUMC appropriately provided and

---

*Tenn., Inc.*, 2007 WL 712281, at *3 (M.D. Tenn. Mar. 6, 2007) (finding the acts of "suppl[ying] an incomplete document and to have later updated that document" and "delay in providing defendant with a full list of each insurance claim at issue" do not warrant sanctions). Also relevant here, to be taken in "bad faith" a legal position must be both incorrect and unreasonable. *See Trustees for Mich. BAC Health Care Fund v. OCP Contractors, Inc.*, 136 F. App'x 849, 853 (6th Cir. 2005) ("Because the Fund had thoughtfully analyzed its legal position and clearly communicated its position to OCP, the district court found that the Fund did not act in bad faith."); *United States v. Skeddle*, 45 F. App'x 443, 445, 447 (6th Cir. 2002) (holding that "the government's position was not so patently without merit that we must agree that the government had to be aware of its defects"); *Trapani v. CBS Recs., Inc.*, 857 F.2d 1475 (table decision) (6th Cir. 1988) ("Although plaintiff's claims have no merit, there is no evidence that he acted in bad faith.").

supplemented its initial disclosures, responded to and supplemented discovery requests, produced over 37,000 pages of documents over sixteen rolling productions, made seven witnesses available for deposition, including several corporate representatives, offered to search Dr. Wilkins' electronic documents, and offered to reopen depositions. The expedited nature of this matter and Welch's belated request for electronic discovery has made the progression of this case unconventional at times, but VUMC continuously has worked to provide Welch the discovery he requested. For his part, Welch has not directed the Court to a single document, deponent, or piece of information that VUMC refused to provide. Welch actually provides the Court a multitude of documents that he contends are harmful to VUMC's position in this matter while simultaneously arguing that VUMC somehow "concealed" those documents. VUMC cannot have "concealed" documents if Welch has them. While Welch focuses on VUMC's assertion of the peer review privilege, his complaints fare no better. VUMC has cited the Court to multiple cases that establish the propriety of VUMC's assertion of the privilege in this context and VUMC's good faith reliance on the privilege. This issue, however, is of no import as VUMC produced the documents that are protected by the privilege. VUMC has demonstrated good faith throughout this litigation.

Second, Welch did not suffer prejudice. Welch generically contends that he was "prevented from seeking documents and questioning witnesses on important documents." This is inaccurate as VUMC consistently provided to Welch the documents and the depositions that he requested. Welch complains that he did not have certain documents before depositions that took place between September 25 and October 4, 2024, mere days after the Court directed VUMC to perform a robust electronic document production. Three points are critical. First, VUMC went to great lengths to provide electronic documents to Welch as soon as possible but simply could not create a document review protocol, identify and educate reviewers, and complete even some of the

review within a matter of days, as Ms. Halter details in her Declaration. Second, knowing this, Welch did not ask to reschedule the depositions. Third, VUMC offered to reopen depositions, as contemplated by the Court in its Order. (Docket Entry 58 at 4) ("Finally, **any party may request additional time to resume a deponent's deposition based on later-produced ESI**."). Welch did not ask that VUMC reopen a single deposition -- that is, until December 11, 2024.[18] Welch did not suffer prejudice, and his nonspecific claims of prejudice fall flat.[19]

Third, the sanctions Welch requests are extraordinarily severe and unrelated to the issues that he raises. Sanctions are not warranted under any scenario. VUMC provided to Welch the documents and the depositions that he requested and even offered to provide additional documents and reopen depositions at Welch's request. Given this, sanctions are not warranted, particularly the severe sanctions that Welch requests. Moreover, the sanctions that Welch requests have no relation to the alleged conduct at issue. Welch asks the Court to find that "VUMC acted with specific intent to cause serious physical harm to [Welch]." None of the electronic documents

---

[18] Welch contends that he suffered prejudice because his expert witnesses did not have an opportunity to review electronic documents. The contention is disingenuous as Welch had thousands of pages of electronic documents before his expert disclosure deadline, and not one of his expert witnesses said that they relied on a single electronic document from VUMC. Portions of the expert disclosures are attached to VUMC's Notice of Filing as collective Exhibit B.

[19] Welch's requested sanction is analogous to a dismissal since if granted it would be dispositive on a disputed element of his claims, which is why the four factor test is appropriate. *See Jernigan v. PennyMac Holdings, LLC*, 2016 WL 1545616, at *1 (M.D. Tenn. Apr. 15, 2016) (citing *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)) ("The Sixth Circuit uses a four-factor test to consider dismissal under Rule 41(b) or Rule 37(b)(2)(A)."). In addition to sanctions being inappropriate because VUMC's actions have been proper, such a dismissal is not allowed since VUMC was not previously put on notice of such a possibility. *D & R Servs., LLC v. Mesa Underwriters Specialty Ins. Co.*, 2024 WL 2830660, at *5 (6th Cir. June 4, 2024) (quoting *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988) and *Carpenter v. City of Flint*, 723 F.3d 700, 708 (6th Cir. 2013)) ("This Circuit has repeatedly deemed dismissal an abuse of discretion when the court did not put the derelict parties on notice that further noncompliance would result in dismissal . . . . Likewise, we have elaborated that boilerplate language, which does not explicitly identify dismissal as a sanction, is not sufficient to put a party on notice of such a harsh sanction.").

discuss, mention, or use the name Dexter Welch. (Halter Dec. ¶ 11). Of the VUMC employees deposed, only two actually provided medical care to Welch -- Dr. Rachel Forbes and Dr. Lewis, and VUMC offered to reopen depositions, including the deposition of Dr. Lewis. This is not a disparate impact case. Welch must prove that VUMC intentionally discriminated against him and that he suffered actual damage. VUMC has followed every discovery order from the Court, resulting in the production of over 37,000 pages and the presentation of seven deponents. Welch has not been able to identify a document or a deponent that proves VUMC intentionally discriminated against him or that he suffered actual damage. This last-minute (and untimely) attempt to extend the discovery deadline months after it passed and to simultaneously secure findings of intentional discrimination and actual damage when none exists should not be countenanced, and VUMC moves the Court to deny outright Welch's allegations and requests.

## II.     PARTIES' GOOD-FAITH ATTEMPTS AT RESOLUTION

In addition to previous efforts at meeting and conferring, prior to the discovery orders already entered by the Court, the parties have exchanged several letters concerning the topics addressed herein, attached to the Declaration of Matthew L. Venezia, for the Court's reference. Venezia Decl., Exhs. N–P, X–Z. The parties discussed these matters by videoconference on October 22, 20024, and again on October 28, 2024. *Id.* ¶¶ 11, 13. Mr. Venezia and Ms. Polly met and conferred briefly in person on November 8, 2024, after the conclusion of an expert deposition. *Id.* ¶ 17. Then, on December 9, 2024, Mr. Greene held a lengthy in-person meet and confer with Ms. Polly and Mr. McKelvey, at the K&L Gates office, concerning the subject matter of this motion. *Id.* ¶ 20. Following these efforts, the parties remain at an impasse.

In this regard, Plaintiff requested that VUMC pay costs associated with reopening discovery, agree to Plaintiff making additional expert disclosures, and to not filing any motion for

summary judgment until after any discovery issues are resolved. Plaintiff also requested that VUMC search for and provide documents from Drs. Wilkins, Pinson, and Balser, make them available for deposition, and also make Dr. Lewis available for deposition.

In response, VUMC offered to, after the first of the year, search for documents for Dr. Wilkins, and reopen the depositions of Drs. Wilkins and Lewis. VUMC further explained that "we can agree to do the following upon your agreement not to raise these claimed discovery issues with the court because we thus would have done what the court instructed (Docket Entry 58 at 4), what you previously asked that we do, and what we previously agreed to do[.]" Exh. AA.

VUMC has agreed to: (1) reopen the deposition of Dr. Lewis; (2) reopen the Federal Rule of Civil Procedure 30(b)(6) deposition of Dr. Wilkins; and (3) run search terms across Dr. Wilkins' electronic documents during the relevant timeframe. Welch is proceeding with this discovery dispute.

III.   **CONCLUSION**

As explained above, the parties respectfully request that the Court rule on Plaintiff's request for issue sanctions.

Respectfully submitted,

Dated:  December 23, 2024

*/s/ Matthew L. Venezia*
Matthew L. Venezia, *Pro Hac Vice*
California Bar No. 313812
Christopher W. Arledge, *Pro Hac Vice*
California Bar No. 200767
George B. A. Laiolo, *Pro Hac Vice*
California Bar No. 329850
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Email:  mvenezia@ellisgeorge.com
Email:  carledge@ellisgeorge.com
Email:  glaiolo@ellisgeorge.com

*/s/ Jeffrey A. Greene*
Jeffrey A. Greene
Tennessee Bar No. 10972
Fitchpatric & Greene, PLLC
1852 Wilson Pike
Franklin, TN 37067
Telephone:  (615) 477-4917
Email:  jeff@jgreene.us

*Attorneys for Plaintiff Dexter Welch*

*s/Erin Polly*
Erin Polly
Terrence M. McKelvey
Emma Wolfe
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, TN 37203
Telephone:     (615) 780-6700
Facsimile:     (615) 780-6799
Email:  erin.polly@klgates.com
Email:  terrence.mckelvey@klgates.com
Email:  emma.wolfe@klgates.com

*Counsel for Defendant Vanderbilt*

39

# CM/ECF USER MANUAL II.B

I, Matthew L. Venezia, represent that all signatories consent to the filing of the foregoing

Joint Discovery Dispute Statement.

*s/ Matthew L. Venezia*
Matthew L. Venezia, *Admitted Pro Hac Vice*
California Bar No. 313812
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Email: mvenezia@ellisgeorge.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 23, 2024 the foregoing **JOINT DISCOVERY DISPUTE STATEMENT** has been served via CM/ECF, the Court's electronic case filing system, on all parties and counsel registered with CM/ECF in this action as follows:

Attorneys for Defendant
UNITED NETWORK FOR ORGAN
SHARING

George H. Cate, III
Kimberly M. Ingram-Hogan
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Telephone:   (615) 244-2582
Facsimile:    (615) 252-6380
Email:  gcate@bradley.com
Email:  kingram@bradley.com

Daniel M. Blouin
Thomas G. Weber
Tyler C. Richards
Winston & Strawn LLP
35 W Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-7544
Telephone:   (312) 558-3260
Email:  dblouin@winston.com
Email:  tgweber@winston.com
Email:  trichards@winston.com

Attorneys for Defendant
VANDERBILT UNIVERSITY MEDICAL
CENTER

Erin Polly
Terrence M. McKelvey
Emma Wolfe
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, TN 37203
Telephone:   (615) 780-6700
Facsimile:    (615) 780-6799
Email:  erin.polly@klgates.com
Email:  terrence.mckelvey@klgates.com
Email:  emma.wolfe@klgates.com

*s/ Matthew L. Venezia*
Matthew L. Venezia