UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| DEXTER WELCH, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:24-cv-00422 |
| UNITED NETWORK FOR ORGAN SHARING, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Dexter Welch's ("Welch") Motion for Reconsideration of Order on Summary Judgment. (Doc. No. 120). Welch moves for the Court to reconsider its decision denying Welch's motion for summary judgment on his Title VI claim against Vanderbilt University Medical Center ("VUMC"), as well as the Court's decision granting VUMC's motion for summary judgment on Welch's breach of fiduciary duty claim. (Doc. No. 120-1). VUMC informed Welch of its intent to oppose. (Doc. No. 120-2 ¶ 2). Because Welch's motion merely refashions old arguments and boldly introduces new ones at the eleventh hour, the Court did not deem a response from VUMC necessary. M.D. Tenn. L.R. 7.01(a)(3) ("Except for motions for reconsideration (to which no response shall be filed unless ordered by the Court), any party opposing a motion" must file opposition within 14 days after service of the motion.). For the following reasons, Welch's motion (Doc. No. 120) is **GRANTED** and having reconsidered, the Court finds no clear error and so there is no basis to modify its decision (Doc. Nos. 118, 119).

**I.      BACKGROUND AND LEGAL STANDARD**

On February 19, 2025, the Court ruled on various pending motions, including Welch's Motion for Summary Judgment (Doc. No. 95) and Defendants' Motion for Summary Judgment

(Doc. No. 86).  (Doc. Nos. 118, 119).  In its ruling, the Court: (1) denied Welch's Motion (Doc. No. 95) on his Title VI claim against VUMC because of Welch's improper reliance on the strict scrutiny standard governing racial classification claims; and (2) granted VUMC's Motion (Doc. No. 86) on Welch's breach of fiduciary duty claim, given VUMC does not owe Welch a fiduciary duty as a matter of law, and Welch failed to point to evidence creating a genuine dispute of material fact as to his theory of vicarious liability, which was sparingly pled and only introduced in opposition to VUMC's Motion.  Welch now moves for reconsideration of these decisions pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 7.01(a), asserting both rulings are clear error.

> Under Rule 54(b),
>
> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all [of] the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The express language of Rule 54(b) does not provide for motions for reconsideration by parties. See Fed. R. Civ. P. 54(b).  Nor does it prescribe standards or bases for revisions of challenged decisions.  Id.  Local Rule 7.01(a) does little to resolve this ambiguity, as it does not provide for the circumstances through which a party may move for reconsideration, nor the applicable standard of review.  M.D. Tenn. L.R. 7.01(a).  Rather, it refers to motions for reconsideration only within the context of responsive motions, stating:

> *Except for motions for reconsideration* (to which no response shall be filed unless ordered by the Court), any party opposing a motion must serve and file a memorandum of law in response, and, if necessary to support assertions of fact, affidavits and depositions, not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. The response shall not exceed twenty-five (25) pages without leave of Court. If a timely response is not filed, the motion shall be deemed to be unopposed,

> except for motions to reconsider for which no response shall be permitted unless ordered by the Court.

M.D. Tenn. L.R. 7.01(a)(3) (emphasis added). However, the Sixth Circuit has opined that a motion for reconsideration of an interlocutory order may be properly raised under Rule 54(b). Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 F. App'x 949, 952, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). The Rodriguez court instructs that "courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Id. at 959. Welch brings his motion pursuant to the third consideration, a need to correct a clear error.

Borrowing from the Sixth Circuit's instruction on similar Rule 59(e) and 60 motions, see Rodriguez, 89 F. App'x at 959 n.8 (noting district court's guidance to Rules 59(e) and 60 as reference points to consider prejudice), motions for reconsideration on "reiterated arguments that the court ha[s] previously rejected" are not appropriate. Dassault Systemes, SA v. Childress, 828 F. App'x 229, 249 (6th Cir. 2020); see Johnson v. Unknown Dellatifa, 357 F.3d 539, 544 (6th Cir. 2004) (finding that the district court did not abuse its discretion in denying a Rule 60(b) motion where the movant merely reiterated arguments that he previously made and that the district court had dismissed); Erby v. Kula, 98 F. App'x 405, 407 (6th Cir. 2004) (same); see also Bey v. Johnson Cnty., 2016 WL 11804542, at *1 (E.D. Tenn. Apr. 11, 2016) (applying this principle to a Rule 54(b) motion). By contrast, new arguments "raised for the first time in a motion for reconsideration at the district court [are] generally forfeited." United States v. Huntington Nat'l Bank, 574 F.3d 329, 331–32 (6th Cir. 2009); see Every v. Brennan, 2018 WL 4568600, at *2 (E.D. Tenn. Sep. 24, 2018) (applying this principle to a Rule 54(b) motions).

3

## II. DISCUSSION

Welch argues that the Court committed clear, reversable error by: (1) "failing to follow Supreme Court precedent requiring that racial classifications can be subjected to strict scrunty" under Title VI; (2) misstating the bases for Welch's breach of fiduciary duty claim as articulated in his papers; and (3) failing to address record evidence supporting Welch's breach of fiduciary duty claim. (Doc. No. 120-1 at 3, 9). All of Welch's arguments fail on both procedural and substantive grounds. (See Doc. Nos. 118, 119).

As a procedural matter, Welch's arguments are not properly before the Court. Welch's first argument on the proper standard to apply to his Title VI claim has already been argued before the Court on four different occasions, all of which the Court has rejected. (Doc. No. 33 at 17–19 (Welch arguing for application of strict scrutiny to Title VI claims in opposition to UNOS's motion to dismiss); Doc. No. 34 at 19–21 (same in opposition to VUMC's motion to dismiss); Doc. No. 94 at 18–22 (same in affirmative summary judgment briefing); Doc. No. 113 at 12–13 (same in response to Defendants' motion for summary judgment); Doc. No. 118 at 18, 47 (rejecting application of strict scrutiny analysis to Welch's Title VI claims)). The same is true for Welch's argument that the Court misconstrued his breach of fiduciary duty claim. Welch's response to VUMC's motion asserted his claim was premised on VUMC's failure to disclose (Doc. No. 113 at 26), and the Court found Welch failed to present evidence demonstrating as much (Doc. No. 118 at 50–55). Welch's desire to reassert his summary judgment arguments here is an obvious inappropriate use of a motion for reconsideration, and squanders his and the Court's resources. See Dassault Systemes, 828 F. App'x at 249 (parties may not raise arguments previously rejected on motion for reconsideration).

4

Nor is Welch's argument that there is a genuine dispute of material fact on his breach of fiduciary duty claim appropriate for reconsideration. Welch—for the first time—"guide[s] the Court through[,]" "in specific detail," evidence supporting his breach of fiduciary duty claim that was not presented during summary judgment briefing. (Doc. No. 113 at 24–26 (Welch's response to VUMC's motion on Welch's fiduciary duty claim, citing to Doc. No. 110 ¶¶ 31–33, 62, 35–36 in support); Doc. No. 120-1 at 15–19 (referencing various pieces of evidence establishing the identity of Welch's doctors who allegedly failed to disclose the use of the race-based coefficient to him, as well as their scope of work, not referenced in Welch's opposition)). Welch's belated attempt at a "do-over" disguised as clear error is of no moment. See Huntington Nat'l Bank, 574 F.3d at 331–32.

Given all of Welch's arguments have either been brought before the Court previously, or are refashioned in a new manner, the Court need not consider Welch's arguments on the merits. However, Welch's briefing demonstrates, at best, his continued confusion on the proper legal standards governing his own claims. If the Court's 65-page opinion did not give Welch the clarity he needs heading to trial, (see Doc. No. 118), the Court hopes it will be fruitful to answer his unresolved questions now. Accordingly, the Court will address why Welch's arguments fail on the merits.

> 1. <u>Welch's First Argument That the Court Erred in Not Applying Strict Scrutiny to His Title VI Claim Fails.</u>

The Court starts with Welch's first argument, that in denying Welch's motion for summary judgment on his Title VI and THRA claims because he applied the wrong standard, the Court committed clear error by not following Supreme Court precedent applying strict scrutiny to race classification claims under Title VI. (Doc. No. 120-1 at 3). The Court appreciates Welch's additional briefing on the well-established authority applying strict scrutiny to racial classifications

5

under the Equal Protection Clause of the Fourteenth Amendment and related Title VI classification claims.  (See id. at 3–9).  However, in continuing to focus on cases contemplating analysis of racial classifications under Title VI, Welch repeatedly misconstrues his own Title VI claim, as set forth in his Complaint.

Welch bases his argument that the Court committed clear error on his repeated faulty assumption that the race-based coefficient here should be treated as a racial classification under the Equal Protection Clause and related Title VI precedent.  Welch is correct that the Equal Protection Clause, and by extension Title VI under the same circumstances, requires strict scrutiny of any government policy or practice that classifies individuals based on race, color, or national origin.  Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 198 n.2 (2023) (applying strict scrutiny to race-based admissions program that plaintiff contended violated the Equal Protection Clause and Title VI); Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 720 (2007) (reviewing plaintiffs' equal protection claim based on a student assignment plan that relied on racial classification with strict scrutiny); see also Regents of University of California v. Bakke, 438 U.S. 265, 287 (1978) ("In view of the clear legislative intent, Title VI must be held to proscribe only those *racial classifications* that would violate the Equal Protection Clause or the Fifth Amendment.") (emphasis added); Alexander v. Sandoval, 532 U.S. 275, 280–81 (2001) (reiterating Bakke), Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003) ("We have explained that discrimination that violates the Equal Protection Clause of the Fourteenth Amendment committed by an institution that accepts federal funds also constitutes a violation of Title VI.").

6

Case 3:24-cv-00422     Document 136     Filed 03/14/25     Page 6 of 18 PageID #: 6774

What Welch leaves out of his argument, but is inherent in the precedent he relies upon, is that only Title VI *classification* claims are evaluated under the strict scrutiny analysis.[1] While the legal authority applying Title VI law is expansive and sometimes inconsistent, it is well-established that Title VI intentional discrimination claims *not* based on race classifications are evaluated through many different analytical frameworks unrelated to the Equal Protection Clause analysis, most of which stem from precedent from other provisions of the Civil Rights Act of 1964. See, e.g., Buchanan v. City of Bolivar, Tenn., 99 F.3d 1352, 1356–57 (6th Cir. 1996) (evaluating Title VI claim under burden shifting framework, opining that the plaintiff "failed to introduce any evidence tending to prove that the defendants' reasons were a mere pretext"); Foster v. Michigan, 573 F. App'x 377, 389 (6th Cir. 2014) (upholding district court's dismissal of Title VI claim where plaintiff did not allege that defendants "participated in, was aware of, or was deliberately indifferent to any discriminatory acts"); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 273 ("Other courts of appeals to have considered the issue agree that deliberate indifference may, in certain circumstances, establish intentional discrimination for the purposes of a Title VI claim."); see also Johnson v. City of Clarksville, 186 F. App'x 592, 595 (6th Cir. 2006) ("We assume without deciding that [the McDonnell Douglas] burden-shifting framework governs Plaintiffs'

---

[1] That Welch knows as much is evident by his repeated references to a non-binding Department of Justice legal manual describing the different types of Title VI claims and manners which they can be proven, and clearly shows that only one subset of Title VI claims mirrors the Equal Protection Clause analysis. (See Doc. No. 94 at 19 (citing Civil Rights Division, Section VI – Proving Discrimination – Intentional Discrimination, U.S. Dep't of Just. (https://www.justice.gov/crt/fcs/T6Manual6) (last visited March 11, 2025) (advising that "[c]ourts have developed a number of analytical frameworks for assessing intent claims" and "the elements of a Title VI intent claim derive from and are similar to the analysis of cases decided under the Fourteenth Amendment's Equal Protection Clause and Title VII of the Civil Rights Act of 1964")); Doc. No. 113 at 10 n.2 (citing the same); see also Doc. No. 33 at 15 n.6 (same); Doc. No. 34 at 18 n.6(same)).

Title VI claims."); Paasewe v. Ohio Arts Council, 74 F. App'x 505, 508 (6th Cir. 2003) (applying McDonnell Douglas framework to a Title VI claim).

Should there be any question following the Court's opinion as to whether Welch's Title VI claim is a racial classification claim subject to strict scrutiny or a discrimination claim that requires a Title VII or IX analysis, the Court clarifies now: it is the latter. For Welch's Title VI claim to be subject to strict scrutiny, as he requests, Welch would need to plead and demonstrate that VUMC "distributes *burdens or benefits* on the basis of individual *racial classifications*." Parents Involved in Cmty. Schs., 551 U.S. at 720 (emphasis added). The Complaint is devoid of any allegations asserting that VUMC had such a policy. (Doc. No. 1 ¶¶ 13, 27, 33, 37, 40, 46, 47, 49, 50, 71, 84, 85 ("policy" allegations pertaining to only UNOS)). Instead, Welch's Title VI claim against VUMC is premised on the notion that VUMC applied the race-based coefficient directly to Welch, thus delaying his accrual of wait time and prejudicing his chances of receiving a donor kidney. (Id. ¶ 70).

Even if the Court were to attempt to construe Welch's Title VI claim as stating that VUMC burdens all Black patients via the race-based coefficient in the eGFR test such that it is a racial classification, this theory of liability falls apart for two reasons. First, discovery has proven it untrue. The parties agree that the race-based coefficient: (1) is used in only one of three methods of measuring kidney function, the eGFR test (Doc. No. 110 ¶ 18); (2) impacts one of two methods through which one can potentially be added to the national kidney transplant waitlist (i.e., low kidney function or dialysis) (Doc. No. 1 ¶ 32; Doc. No. 110 ¶ 17); and (3) may be considered in conjunction with a variety of factors when assessing whether to refer a patient for potential waitlist registration (Doc. No. 112-1 ¶ 2). Considering these facts together, it is undisputed that not all Black patients are burdened by the use of the race-based coefficient. To find the race-based

coefficient is a classification on individuals based on this set of facts would be error considering the authority contemplating racial classifications only as policies applicable to all individuals subject to that policy. (See Doc. No. 94 at 18–20 (Welch relying on cases where plaintiffs brought Title VI and equal protection claims premised on illegal racial classifications, such as <u>Students for Fair Admissions</u>, 600 U.S. at 194, 214 (finding college admission program that "can and d[id] take an applicant's race into account" violated the Equal Protection Clause and Title VI) and <u>Vitolo v. Guzman</u>, 999 F.3d 353, 360–61 (6th Cir. 2021) (addressing an equal protection claim, holding United States did not have a compelling interest in awarding Restaurant Revitalization Funds under the American Rescue Plan Act based on an applicant's race)).

Second, Welch does not present any evidence that VUMC had a "policy" of using the race-based coefficient to benefit or burden a particular race, as occurs in racial classification cases. <u>Parents Involved in Cmty. Schs.</u>, 551 U.S. at 720. The one "policy" the Court can find in the record describing VUMC's process for recommending and treating kidney transplant patients makes no mention of race. (<u>See</u> Doc. No. 113-8 (VUMC "Indications and Contraindications for Kidney Transplant" document delineating multiple variables for kidney transplant consideration, not including race)). VUMC's application of the race-based coefficient to Welch in the context of this policy is far different from statutes and policies that explicitly assign positive or negative outcomes to all individuals of a specific race and that are undoubtedly subject to strict scrutiny review. <u>See</u> <u>Parents Involved in Cmty. Schs.</u>, 551 U.S. at 720; <u>see also</u> <u>Bakke</u>, 438 U.S. at 272–75, 289 (holding school's special admissions program that held 16 of 100 positions for disadvantaged minority students was a classification based on race and ethnic background); <u>Gratz</u>, 539 U.S. at 254–55, 270 (applying strict scrutiny to college admission program that subject applicants to "different admissions outcomes based upon their racial or ethnic status" where

9

applicants "could receive points for underrepresented minority status"); Adarand Constructors, Inc. v. Pena, 515 U.S. 220, 227 (1995) (applying strict scrutiny to federal set-aside program that provided financial incentives to hire minority contractors); Loving v. Virginia, 388 U.S. 1, 11–12 (1967) (invalidating a miscegenation statute which prohibited interracial marriage).

Absent proper pleading and affirmative evidence demonstrating that his claim is based in a racial classification, Welch must show intentional discrimination through other forms of direct or circumstantial evidence. See supra, Section II.1. at 6 n.1. In these cases, the analysis is more akin to a Title VII or IX claim, rather than an equal protection claim under the Fourteenth Amendment (Doc. No. 118 at 39–40). See, e.g., Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 307–08 (In the Title VII context, "[w]here gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination."); In re Rodriguez, 487 F.3d 1001, 1007–08 (6th Cir. 2007) (remarks on plaintiff's accent are direct evidence of national origin discrimination). The Court's reliance on Supreme Court and Sixth Circuit authority demonstrating the difference between Welch's Title VI claim (which resembles a Title VII claim) and the claim Welch wishes he had asserted (which resembles an Equal Protection Clause claim) is therefore not only on point, but far from clear error. (See Doc. No. 118 at 47).

Given Welch has had knowledge of VUMC's use of the race-based coefficient from the beginning of this case, he had the opportunity to bring a Fourteenth Amendment claim in conjunction with his Title VI claim, and could have structured both to allege VUMC had a policy of applying the race-based coefficient to all Black patients, to their burden. Indeed, all of the cases implicating Title VI claims that Welch cited to in support of his position brought such claims in conjunction with Fourteenth Amendment claims. (Doc. No. 94 at 19 (citing Students for Fair

Admissions, 600 U.S. at 206 (applying strict scrutiny to Title VI and equal protection racial classification claims); Grutter v. Bollinger, 539 U.S. 306, 343 (2003) (same)). If Welch wanted to bring a similar suit here, it was his obligation plead as much. The Court will resist his invitation to amend his Complaint by judicial fiat. Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 407 (6th Cir. 2007) (the plaintiff is the master of his complaint); see Tucker v. Union of Needletrades, Indus. & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005) (affirming district court's refusal to consider claim first raised at summary judgment when it was not pled, nothing in the complaint gave the defendants notice, and plaintiff had information for claim but did not include it in the complaint or seek leave to amend). For Welch's own reasons, he chose not to do so. To allow Welch to espouse a new theory of his case without proper notice to VUMC would cause chaos in the litigation process and would be particularly unjust given the expedited schedule this Court imposed at Welch's request. Davis v. Echo Valley Condo. Ass'n, 945 F.3d 483, 496 (6th Cir. 2019) ("[I]f the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally subjects a defendant to 'unfair surprise[.]'") (internal citation and quotations omitted); see Tucker v. Union of Needletrades, Indus. & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005) (affirming district court's refusal to consider claim first raised at summary judgment when it was not pled, nothing in the complaint gave the defendants notice, and plaintiff had information for claim but did not include it in the complaint or seek leave to amend).

Ultimately, Welch decided to plead a Title VI claim based on the theory that VUMC applied a race-based coefficient to Welch during his medical treatment that, although alleged to be an equalizer for patient care, has led to intentional discrimination against him. Because Welch's argument on his Title VI claim amounts to an attempt to replead his claim through a recitation of

11

Case 3:24-cv-00422    Document 136    Filed 03/14/25    Page 11 of 18 PageID #: 6779

a prior argument based on an inaccurate reading of the Court's opinion and inapplicable case law, Welch's motion will be denied in its request for the Court to apply strict scrutiny to his Title VI claim.

> 2. Welch's Second Argument That the Court Misstated Welch's Breach of Fiduciary Duty Claim is Incorrect.

The Court turns to Welch's second argument, that the Court committed clear error by misstating the basis for Welch's breach of fiduciary duty claim "as articulated in his papers." (Doc. No. 120-1 at 9). Welch contends that the Court's emphasis on who registered him to UNOS using the race-based coefficient and who failed to recalculate his waitlist time for a year is the improper lens through which to view his claims. (Id.). Instead, Welch argues that his breach of fiduciary duty claim is based on "(a) race-based discrimination via use of the race-based coefficient on [Welch's] eGFR scores, and (b) failure to disclose that discriminatory use of the race-based coefficient to [Welch]," which the Court did not account for. (Id. at 9). This characterization of the Court's opinion fails in three critical ways.

First, Welch ignores his own Complaint. If Welch is confused as to why the Court discussed whether he presented evidence on a VUMC doctor submitting an eGFR score to UNOS that used the race-based coefficient, or VUMC's failure to promptly calculate Welch's wait adjustment time, he should revisit the allegations he made as to VUMC's alleged breach of fiduciary duty in the Complaint. (Doc. No. 1 ¶ 77 ("[VUMC] breached its fiduciary duty to Mr. Welch by knowingly submitting eGFR scores for Mr. Welch that were tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing Mr. Welch's chances of receiving a donor kidney. Even after UNOS changed course and outlawed use of the race-based coefficient, [VUMC] failed for approximately another year to recalculate Mr. Welch's wait time.")). Welch asserts the Court committed clear error in relying on the Complaint to frame his

12

claim, arguing these alleged breaches are "not what Mr. Welch argues occurred." (Doc. No. 120-1 at 11). While this may not be Welch's new theory of his fiduciary duty claim, it is the one he pled. (Doc. No. 1 ¶ 77). Welch concedes there is no evidence in support of these pled theories of liability, justifying the Court's grant of summary judgment in VUMC's favor. (Doc. No. 120-1 at 9–10 ("[I]t is undisputed that VUMC did not register [Welch] on the basis of an eGFR score.")).

On Welch's argument that the Court improperly ignored his theory that VUMC committed a breach of fiduciary duty through "race-based discrimination via use of the race-based coefficient on [Welch's] eGFR scores," the Court's dismissal of this argument was for good reason: such a theory of liability was not pled in the Complaint. (See Doc. No. 1 ¶ 77). If Welch wanted to argue this theory of liability, he should have moved to amend the Complaint to put VUMC on notice of it. Davis, 945 F.3d at 496; see Tucker, 407 F.3d at 788; Vonderhaar v. Waymire, 797 F. App'x 981, 990 (6th Cir. 2020) (plaintiff could not "expand[ ]" her claim in opposition to the defendant's summary-judgment motion "to include theories of recovery that bore no resemblance whatsoever to the . . . theory raised in her complaint"). Because Welch cannot bring a new theory of liability at the summary judgment stage or on a motion for reconsideration, the Court need not further evaluate Welch's arguments on this new theory.

Welch's argument that the Court did not address his theory that VUMC committed a breach of fiduciary by failing to disclose the use of the race-based coefficient to Welch is also false. The Court's opinion on the parties' summary judgment briefing references VUMC's alleged failure to disclose in two separate instances. (Doc. No. 118 at 50, 53). It also refers to the Court's lengthier discussion on Welch's disclosure theory for incorporation therein. (Id.; see id. at 20 ("Welch certainly sufficiently alleges that VUMC and its employees did not act in his best interests, as VUMC and its providers did not inform Welch of the use of the race-based coefficient, nor did

13

they promptly inform him of an adjusted waitlist time.")).  Indeed, the Court considered Welch's failure to disclose argument, and did not find more than a scintilla of evidence in support of it. (See Doc. No. 118 at 54).

> 3. Welch's Third Argument That the Court Overlooked Cited Record Evidence Supporting Welch's Breach of Fiduciary Duty Claim is Incorrect.

The Court turns to Welch's last argument, that the Court erred in granting VUMC's motion on Welch's breach of fiduciary duty claim without considering relevant record evidence in Welch's favor.  (Doc. No. 120-1 at 13–19).  In support of this argument, Welch contends: (1) that "[i]t was not foreseeable" that this case "would be decided on the grounds that the VUMC doctors that VUMC argued exercised sound medical discretion somehow were not VUMC doctors at all, or were not acting within the scope of their employment in providing medical care to Mr. Welch;" (2) argues that "it goes without saying that doctors, in evaluating patients and their kidney function scores to make transplant referral recommendations, are acting within the scope of their employment at their respective hospitals;" and (3) presents various pieces of evidence not presented during summary judgment briefing that demonstrate his theory that VUMC is liable through respondeat superior.  (Doc. No. 120-1 at 12).

Welch's first two arguments miss the mark.  To the extent Welch takes issue that VUMC did not argue that Welch cannot satisfy the respondeat superior elements of his claim, this does not paint the whole picture.  First, VUMC argued that it could not be directly liable for a breach of fiduciary duty as a matter of law, which the Court agreed with.  (Doc. No. 118 at 52 ("[T]he Court is not inclined to find as a matter of law that VUMC has a fiduciary duty to its patients absent vicarious liability.")).  VUMC also argued that Welch failed to establish a genuine dispute of material fact as to each of the elements of his claim.  (Doc. No. 91 at 29–30).  In the interest of ensuring Welch was fully heard, the Court considered his argument in response that hinged, in

14

part, on a theory of respondeat superior. (Doc. No. 113 at 24–26). While the Court did find that Welch plausibly alleged this theory pending further factual inquiry (Doc. No. 118 at 20), Welch's response to VUMC's motion was the first time Welch had ever argued he was seeking to hold VUMC liable based on respondeat superior. (See Doc. No. 33 (not arguing VUMC was liable for a breach of fiduciary duty via respondeat superior); Doc. No. 34 (same); Doc. No. 94 (seeking summary judgment on breach of fiduciary duty claim, but not on a theory of respondeat superior)). In making this argument, Welch sought consideration of the *only* remaining theory of liability that could sustain his claim, depriving VUMC of an opportunity to respond. See Matthews v. Wells Fargo Bank, 536 F. App'x 577, 579 (6th Cir. 2013) (a defendant is entitled to address new arguments raised for the first time in a plaintiff's response). To the extent VUMC was able to respond, it opposed Welch's other arguments. (Doc. No. 108 at 23 (arguing VUMC healthcare professionals had no duty to explain how each lab result was calculated in performing their duties in response to Welch's motion)). Despite Welch using his breach of fiduciary duty claim as a moving target, the Court fully considered his respondeat superior theory of liability.

In arguing respondeat superior, Welch failed to assert both the elements of that theory of liability and sufficient evidence in support.[2] (Doc. No. 113 at 24–26). Now that the Court has ruled in VUMC's favor, Welch comes forward with different evidence in support of his claim based on his theory of respondeat superior liability.[3] (Doc. No. 120-1 at 17–19). In doing so,

---

[2] Despite Welch's incorporation of his affirmative briefing in his response to VUMC's motion being in direct contravention to this Court's judicial preferences, the Court considered his evidence cited in support of his fiduciary duty claim there, as well. Judicial Preferences ¶ 9 ("Counsel should never incorporate legal authority or factual argument from another document, including a prior brief or the brief of another party in the case.") (https://www.tnmd.uscourts.gov/sites/tnmd/files/Judicial%20Preferences%2020200420.pdf) (last visited March 11, 2025)).

[3] Welch now argues it was Drs. Stephen Raffani, Rachel Forbes, and Julia Lewis that failed to disclose the use of the race-based coefficient to him from 2013 through 2023. Only one piece of

15

Case 3:24-cv-00422    Document 136    Filed 03/14/25    Page 15 of 18 PageID #: 6783

Welch asserts the obligation to do so during briefing was "not foreseeable." (Doc. No. 120-1 at 12). This defies logic, considering Welch's reliance on the theory and his obligation to create genuine disputes of fact on the elements VUMC sufficiently challenged as lacking.[4] (Doc. No. 113 at 24 ("There exists a fiduciary duty under Tennessee law on the part of VUMC and its doctors to Plaintiff."); id. at 25 ("[I]t is well-settled that hospitals have liability for the torts of their employee doctors under the doctrine of respondeat superior."); id. at 26 ("VUMC and its doctors breached the fiduciary duty to Plaintiff by failing to inform Plaintiff that they were using the race-based coefficient to adjust his kidney function scores solely because he is Black."); Doc. No. 91 at 29–30). Welch's arguments fail to account for the fact that if the Court is unaware of the identities of Welch's physicians, their scopes of treatment, and their employments with VUMC, it cannot properly assess whether their failures to disclose the use of the race-based coefficient to Welch were within their job duties such that breaches of those duties may have been attributable

---

evidence cited by Welch in his briefing on his fiduciary duty claim ties any of these doctors, Dr. Stephen Raffanti, to him. (Doc. No. 95-40 (showing Welch's exam notes reviewed by "Raffanti, Stephen P" and signed by nurse practitioner "Wang, Zhijian")). Not only has the cited statement within the document not clearly been shown to fall within a hearsay exception (see Doc. No. 110 ¶ 31 (citing to Doc. No. 95-7 at 33:20–40:1 (Dr. Forbes generally discussing Welch's medical records as a Rule 30(b)(6) witness)), but it does not identify Dr. Raffanti as a doctor, nor does it show what type of physician he is. As the Court has already determined, this small piece of evidence is not enough to establish Dr. Raffanti as Welch's physician, nor the scope of his employment, such that there is a dispute of fact as to whether his failure to disclose the use of the race-based coefficient may be attributable to VUMC. The case of Dr. Lewis is similar: while Welch argued she applied the race-based coefficient, the evidence Welch pointed to in support failed to show as much. (Doc. No. 113 at 27; Doc. No. 110 ¶¶ 27–28 (providing evidence that Dr. Lewis co-authored the MDRD study that created the race-based coefficient), 31–33 (citing to Welch's medical records that do not list Dr. Lewis as a treating physician)).

[4] Further, the parties presented no undisputed facts demonstrating the identity of Welch's doctors, their employment at VUMC, or the scope of their employment. (See generally Doc. Nos. 110, 112-1). While Welch contends that it "goes without saying" that his doctors acted within the scope of their employments when providing medical care, he provides no evidence explaining the scope of that care, as is necessary to establish the purported duties and breaches at issue here.

to VUMC. (See Doc. No. 118 at 53–54). That Welch failed to support this theory of liability—in both his affirmative and opposition briefing—is at his own peril.

Welch's opposition amounted to a skeletal reference to a theory of respondeat superior liability, without any legal authority or factual development in support, that he assumed would carry him through summary judgment. In approaching his claim this way, Welch ignored the Sixth Circuit's warning that "issued averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citation and quotations omitted). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the [C]ourt to put flesh on its bones." Id. (internal citation and quotations omitted). The Court declined to argue Welch's claim for him at summary judgment and finds his late-stage efforts to revive this claim too late. (See Doc. No. 120-1 at 17–19).

In sum, the Court did not commit clear error in relying on the evidence Welch presented at summary judgment to find he did not sufficiently support his breach of fiduciary duty claim against VUMC. See U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1191 (6th Cir. 1997) ("It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment."); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) ("[T]he designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies[.]"). Because the Court declines Welch's motion to reconsider its ruling on his breach of fiduciary duty claim, it also declines Welch's parallel request to reconsider the Court's dismissal

17

of punitive damages. (Doc. No. 120-1 at 20). Accordingly, Welch's second argument for reconsideration fails.

## III. CONCLUSION

Despite Welch's evident frustration, he "has no right to reconsideration" under Rule 54(b). Rodriguez, 89 F. App'x at 959 n.7. Nevertheless, to ensure fairness and provide clarity going forward, the Court fully considered and rejected Welch's arguments. At bottom, it is Welch that requested an expedited case management and trial schedule (Doc. No. 43); Welch who is required to properly plead the claims he wishes to assert in this case; and Welch who has the responsibility of supporting those claims with the correct law and sufficient evidence at summary judgment. Welch's attempt to make it this Court's responsibility to fill in the gaps for him is not well taken.

For the foregoing reasons, Welch's Motion for Reconsideration (Doc. No. 120) is **GRANTED** and having reconsidered, the Court finds no clear error. The Court will not modify its February 19, 2025 order (Doc. No. 119) and accompanying memorandum opinion (Doc. No. 118). The Court urges the parties to use both this opinion and the Court's February 19, 2025 memorandum opinion (Doc. No. 118) to properly focus their efforts as trial quickly approaches.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE